May Term,
1854.

KENTUCKY
MUTUAL IN-
SURANCE Co.
v.
JENKS.

---

THE KENTUCKY MUTUAL INSURANCE COMPANY *v.* JENKS.

On an application for insurance, where the minds of the contracting parties have met upon a distinct proposition made by the one and accepted by the other, chancery will decree its execution; or regarding that as done which ought to be done, chancery will take an account, and make such decree as is just and proper from the case made in the bill.

On the 27th of *September*, 1850, one *J.*, of *Lafayette*, being then in good health, completed an application to the *Kentucky Insurance Company* for an insurance of 1,500 dollars on his life, for the benefit of his wife. The company's agent at *Lafayette* on that day mailed the application to the company. The application was duly approved, and a policy was issued thereon and mailed to the agent, on the 2d of *October*, 1850. It insured the life of *J.* in the sum of 1,500 dollars, for five years from that date, for the benefit of his wife. The policy was received by the agent on the 5th of *October*, 1850. On the 29th of *September*, 1850, *J.* was taken sick, and lingering until the 4th of *October* following, died. On the receipt of the policy (*J.* being dead) the agent immediately returned it by mail to the company. While the treaty for insurance was pending and before *J.*'s application was completed, the company agreed to take the first year's premium in an advertisement of their agency, for six months, in *J.*'s newspaper at *Lafayette*; and accordingly the agent in *August*, 1850, furnished to *J.* the advertisement, which was published in the paper continuously thereafter, as directed by the agent, for six months. The price of the advertisement fell short of the first year's premium 45 cents. This was a bill in chancery by *J.*'s widow, praying discovery of the entries upon the company's books, &c., and that the original application for the insurance, and the original policy issued thereon, should be produced, &c.; that an account should be taken, &c.; and for general relief.

*Held*, that the contract of insurance was, at least, complete on the 2d of *October*, 1850, when *J.*'s application was approved and the policy was mailed

to him; and that there is weighty authority that the acceptance related back to the period when *J.* completed his application.

*Held*, also, that the payment of the premium and the indorsement of the payment on the policy, by the very nature of the contract, were not requisite to complete it.

*Held*, also, that it was incumbent upon the company to furnish the matter to be printed, and that the neglect to furnish more matter or to continue its publication longer, so that its value should equal the first year's premium, could not affect the complainant's rights.

A substantial compliance with the stipulations usually found in insurance policies, is all that is requisite for the validity of the contract.

It is not good policy in Courts to favor such cunningly devised insurance policies, as that whatever event happens, the underwriters may reap the premium and escape the risk. On the contrary, some degree of acuteness will be called in to uphold and enforce such agreements, whenever there has been a fair contract and a substantial compliance.

Insurance companies are not favorites of the law.

*May Term,*
**1854.**

KENTUCKY MUTUAL INSURANCE CO.
v.
JENKS.

APPEAL from the *Tippecanoe* Court of Common Pleas.

*Thursday, May 25.*

STUART, J.—*Emeline Jenks* filed her bill in chancery against the company to enforce an insurance contract; praying discovery of the entries on the insurance company's books, &c.; that the original application for such insurance, and the original policy issued thereon, be produced and filed; that an account be taken, &c.; with general prayer for such other relief as the case made might require.

The contract sought to be enforced was an insurance for 1,500 dollars on the life of *James P. Jenks*, the husband of complainant, and for her benefit, alleged to have been effected with the appellant.

The cause came to hearing on the bill, answer, exhibits, &c. Decree in accordance with the prayer of the bill. The insurance company appeals.

A printed copy of the record and proceedings in the cause, together with several elaborate briefs, all printed, have greatly facilitated our labors.

The principal facts, without reference to the order in which they occur in the pleadings and evidence, are briefly these.

In *August*, 1850, *Jenks* applied to the company's agent

VOL. V.—7

May Term,
1854.

KENTUCKY
MUTUAL IN-
SURANCE CO.
v.
JENKS.

at *Lafayette* to insure 1,000 dollars on his life, for five years, for the benefit of his wife. He proposed that the first year's premium should be paid in advertising their agency in *Jenks's* paper, the "*Lafayette Courier.*" *Wilstach*, the agent, not feeling at liberty to act on such a proposition, referred it directly to the company, strongly recommending its acceptance. On the 12th of *August*, 1850, the insurance company replied that "the board had concluded to issue a policy to Mr. *Jenks* on the terms proposed (first year's premium to be taken in advertising) and that the agent could forward the application as soon as ready." About the middle of *August*, 1850, *Wilstach* accordingly handed *Jenks* for publication an advertisement of the insurance company. It was published continuously in the "*Courier*" six months.

It is not disputed but that this advertisement was to go as payment on the premium of the first year; nor but that the publication was of the value of 12 dollars.

*Wilstach* testifies that the 1,000 dollars was at first mentioned only generally; but that on subsequently looking over the insurance company's tables, they (*Jenks* and *Wilstach*) found that the premium on 1,500 dollars would about amount in his case to the value of the printing.

The application for insurance on 1,500 dollars was therefore prepared, and signed by *Jenks*. It was not, however, complete; as to one of the questions there was a blank, which he was not then ready to answer without further inquiry. Thus the matter stood till the 27th of *September*, 1850, *Wilstach* frequently urging *Jenks* to fill the blank and complete the application, that he, *Wilstach*, might have it off his hands. On that day the papers were fully made out, and *Wilstach* mailed them to the insurance company. *Jenks* was then in good health.

It does not very clearly appear when this communication was received by the insurance company. But the company's books show that *Jenks's* application was duly approved, and that the policy was issued thereon *October* 2, 1850.

The substance of the policy was, insuring "the life of

*James P. Jenks* in the sum of one thousand five hundred dollars," for the term of five years from the 2d day of *October*, 1850, until the 2d day of *October*, 1855, at 12 o'clock, noon, &c., for the benefit of *Emeline Jenks*. On the same day, *October* 2, 1850, the insurance company mailed the policy, duly executed, to *Wilstach*, their agent. It was received by him on the 5th of *October*, 1850.

Meanwhile, on the 29th of *September*, 1850, *Jenks* was taken sick, and lingering until the 4th of *October* following, died. Upon the receipt of the policy by the agent after the death of *Jenks*, it was immediately returned by mail to the insurance company.

On this state of facts the insurance company insists that the contract to insure was not complete. And though the argument takes an unnecessarily wide range, this is, in fact, the only material question in the case. For if the contract was complete—if the minds of the contracting parties met upon a distinct proposition, made by the one and accepted by the other—chancery will decree its execution. Or regarding that as done which in equity and good conscience should have been done, chancery will take an account, and make such decree as is just and proper from the case made in the bill.

*Jenks's* application was forwarded, it seems, *September* 27, 1850. That was a proposition to the company to insure his life to the amount of 1,500 dollars, for five years; the first year's premium to be paid in advertising. It is to be inferred from the course of the mail, as disclosed in the other parts of the case, that the application reached the company on the 1st of *October*, 1850. Its approval and acceptance on that or the next day, as shown by the books of the company, closed the contract.

It is true there is considerable conflict among the authorities on this point; some holding that the contract thus made by mail is not complete, until the party making the proposition is advised of its acceptance. Thus *Parker*, C. J., held that the contract was open till the knowledge of its acceptance, that is, the letter announcing its acceptance, was received, or the regular time for its arrival by mail had

May Term,
1854.

Kentucky
Mutual In-
surance Co.
v.
Jenks.

elapsed. *McCulloch* v. *The Eagle Insurance Company*, 1 Pick. 278. There are also several later cases in the *Massachusetts* reports to the same effect. *Walworth*, chancellor, lays down the doctrine quite as broadly, viz., "the minds of the contracting parties must not only meet, but the fact of such concurrence must be communicated to each other, in order to consummate the contract." *Frith* v. *Lawrence*, 1 Paige 434. But the *English* cases on the authority of which these decisions were made, namely, *Payne* v. *Cave*, 3 T. R. 148, and *Cook* v. *Oxley, id.* 653, have been frequently questioned, and may be regarded as overruled. 2 Kent 477.—1 Duer 118, note.—16 East 45. Even the Supreme Court of *Massachusetts*, in the subsequent case of *Thayer* v. *The Middlesex Insurance Company*, is generally conceded to have very materially modified the doctrine laid down in 1 Pick., *supra*. 10 Pick. 332.

The case of *Frith* v. *Lawrence, supra*, came before the Court of Errors in *New-York* under the title of *Mactier's Administrators* v. *Frith;* and the decision of the chancellor on this point was reversed. 6 Wend. 103. In accordance with the case of *Adams* v. *Lindsell*, 1 Barn. and Ald. 681, Mr. Justice *Marcy*, delivering the principal opinion given, held that the contract was perfected when the proposition made by letter was accepted, even though the letter of acceptance could not have reached the residence of the other party till after his death. A similar doctrine had been long since held in the Circuit Court of the *United States*. *Kohne* v. *The Insurance Company of North America*, 1 Wash. 93. A proposal transmitted by letter is regarded as a continuous offer up to the time of answer sent; and then the acceptance thus given completes the contract. *Adams* v. *Lindsell, supra*. The better opinion of jurists, says *Kent*, is, that as soon as an offer by letter is accepted, the consent is given and the contract complete, though the party making the offer may be ignorant of such acceptance. 2 Kent 477, and note.

In a case not referred to by counsel—*Tayloe* v. *The Merchants' Insurance Company*—the same question came before the Supreme Court of the *United States*. *Nelson*,

May Term,
1854.

KENTUCKY
MUTUAL IN-
SURANCE CO.
v.
JENKS.

justice, delivering the opinion of the Court says: On the acceptance of the terms proposed, transmitted by due course of mail, the minds of both parties have met, in the mode contemplated when they entered upon the negotiation, and the contract is complete. In all cases, he continues, of contracts entered into by correspondence, it is impossible that both parties should have a knowledge of it the moment of its completion. 9 How. 390.

There is weighty authority, too, that the acceptance will relate back to the time of the offer made. Lord *Eldon*, as quoted in Chitty on Contracts 14, note. Regarded in this light, the contract for issuing the policy was complete on the 27th of *September*, 1850. And upon the authority of the other cases cited, it was complete on the acceptance of *Jenks's* proposition by the insurance company on the 1st, or, at furthest, on the 2d of *October*, 1850.

Much is said in argument about the payment of the premium, and the indorsement of such payment on the policy, as essential to the completion of the contract. In some cases, as where it was doubtful whether the contract was complete or not, such objection might be entitled to consideration. But not in such a case as this. Here the contract was complete. It was a contract, too, not according to the course of the company's business. Its very terms dispensed with the ordinary course of payment. It must, therefore, be determined on its own facts and circumstances. The first year's premium, ordinarily payable in money, was to be paid in printing. The payment was, therefore, a labor to be continued through a series of months. In accepting *Jenks's* proposition the board was particular to specify that the first year's premium was to be in advertising. The proposition was accepted and the policy issued with reference to that mode of payment (1.) By the very nature of the contract, it devolved on the insurance company to furnish the matter to be advertised. They did so in part, and directed the period during which the publication should be continued. If the matter published did not amount to the first year's premium within 45 cents, it was not the fault of *Jenks*. They should have

May Term,
1854.

KENTUCKY
MUTUAL IN-
SURANCE Co.
v.
JENKS.

furnished more matter or continued that published longer. The neglect of the insurance company to do either did not affect the rights of the assured. Advertising being the stipulated mode of payment, the insurance company had no right to demand anything else. Accordingly, if the advertising were done upon the faith of the contract, within proper time, and in the only manner in which such payment could be made, that is all that could be required. The terms upon which the policy issued, or was to issue, were substantially complied with.

So that the facts of the case growing out of the contract, peculiar as it was in its terms as to payment, rendered the usual mode of transacting the business, and, of course, the reasoning to be deduced therefrom, wholly inapplicable. Nor is it conceived that more than a substantial compliance with the stipulations usually found in such contracts, is ever, in any case, essential to the validity of the contract. Douglass 11.—9 How. 390, *supra.*

It is still insisted, that at least before the policy attached, the premium must be paid; and that even if the contract was made and the policy issued, yet it did not attach; for at the time of *Jenks's* death the premium had not been paid, and could not be paid until the *February* following, when the six months advertising was completed. If it was the understanding of the parties that the policy should not attach till all the advertising was done, the objection would undoubtedly be well taken. It was clearly in the power of the parties so to mould their contract, that the risk of the company should, as to its commencement, be thus deferred.

But unfortunately for this position, the history of the case demonstrates a contrary intent. On the 12th of *August*, 1850, the insurance company directed their agent to forward *Jenks's* application, on the terms proposed, as soon as ready. The first publication in payment of the premium, was made about the middle of *August*, 1850. Had the insurance company understood the contract as they now pretend it was, they would have told Mr. *Jenks* that about the middle of the following *February*, 1851, viz., when the six months' publication was finished, his policy

should issue, running five years from that time. But instead of that, however, the agent says that during six weeks in *August* and *September*, he repeatedly urged *Jenks* to complete his application; that he wanted it off his hands, &c. The insurance company seem equally anxious to have the risk commence; for fear perhaps that *Jenks* might change his mind and demand payment for the advertisement. Accordingly the papers containing *Jenks's* proposition, forwarded *September* 27, 1850, and which must in due course of mail have been received *October* 1, 1850, were promptly acted upon. The proposal seems to have been accepted the day it was received, the policy filled up, and the risk made to commence on the 2d of *October*, 1850.

This state of facts, as between private citizens, would not require a word of comment, and could not induce a moment's hesitation. The insurance company voluntarily commenced their risk more than four months before the payment of the premium, in the mode agreed upon, could possibly be completed. It does not lie with the company now to say that the risk had not commenced at the death of *Jenks*. Whether it be regarded as an executed contract which should entitle the complainant to the delivery of the policy, or an executory contract entitling her to have a policy issued, and the damages assessed, the position of the company is equally untenable. In another view of the case, the insurance company would be the first to question such a doctrine. Had *Jenks* died on the 4th of *October*, 1855, it is apprehended the company would have promptly pointed out this flaw to the complainant, viz., that though the payment of the first year's premium was not made till the middle of *February*, 1851, yet, by the acceptance of the terms proposed, and by the terms of the policy issued, their risk commenced *October* 2, 1850, and terminated *October* 2, 1855, at 12 o'clock, noon, precisely.

It is not good policy in the Courts to favor such cunningly devised insurance policies, as that whatever event happens, the underwriters may reap the premium and escape the risk. On the contrary, some degree of acute-

ness should be called in to uphold and enforce such agreements, whenever there has been a fair contract and a substantial compliance. Insurance companies are not favorites of the law. 1 Duer 118. In *Mactier* v. *Frith, supra,* it is justly observed, that a refinement which would distinguish between a contract for insurance and one for the sale of goods, would, in its application, involve the Courts in distressing embarrassments; and distinctions which are not founded in the nature of things are not to be indulged.

It is suggested in argument that a specific performance of the contract in this case is rendered impossible by the death of *Jenks.* But in the light of the adjudicated cases, we apprehend no difficulty. *Jenks* having been entitled to a policy in his lifetime, a Court of Equity will consider that done which should have been done. And the case being properly a subject of chancery jurisdiction will be retained for the purpose of doing complete equity between the parties. Upon a bill to decree a specific execution of a contract to insure, the Court may decree a satisfaction. *Perkins* v. *The Washington Insurance Company,* 4 Cow. 645.—1 Duer 66. Here there is a special and general prayer, removing even any technical barrier to such relief.

*Per Curiam.*—The decree is affirmed, with 3 per cent. damages and costs.

*H. W. Chase, Z. Baird,* and *J. M. Reynolds,* for the appellants.

*R. C. Gregory* and *R. Jones,* for the appellee.

(1) Whenever it is the condition of a life policy, that the insurance shall not commence before the premium is actually paid, this is waived by the issuing of policy by the insurer before payment. Angell on Fire and Life Insurance, s. 343.