PETER J. BLIEN and Others v. LARS M. RAND and Others.

June 22, 1899.

Nos. 11,634—(177).

### Corporation—Articles of Incorporation—Stockholders.

The right to membership in a corporation may be restricted by express provision of its charter, although it is organized under G. S. 1878, c. 34, tit. 2.

### Same—Stockholders Limited to Norwegians—Insolvency—Estoppel of Other Stockholders.

The defendants subscribed and paid for stock and accepted certificates therefor in a corporation which, by its charter, restricted the right to hold stock therein to persons of a certain nationality, to which the defendants did not belong. The corporation accepted them as stockholders, and, without objection from them, they appeared as stockholders on the books of the corporation for three years, when the corporation became insolvent. In the meantime debts were contracted by the corporation, which are unpaid. *Held*, that the defendants are estopped, as against creditors, to assert that they are not stockholders because they were not in fact eligible to membership in the corporation.

Action in the district court for Hennepin county to enforce the statutory liability of stockholders in a corporation known as Normanna. The case was tried before Lancaster, J., who found in

favor of plaintiffs and against certain defendant stockholders, and in favor of other defendant stockholders. From a judgment entered pursuant to the findings, plaintiffs appealed. Modified.

*John G. Hvoslef* and *W. S. Dwinnell,* for appellants.

*Cross, Hicks, Carleton & Cross, Koon, Whelan & Bennett, Wilson & Van Derlip, A. D. Smith, Wm. H. Morse, Penney & McMillan, Benj. Davenport, Merrick & Merrick* and *C. G. Laybourn,* for respondents.

START, C. J.[1]

This is an action, under G. S. 1894, c. 76, to enforce the liability of stockholders of Normanna, a corporation of this state, for its debts. The defendants, for convenience, may be classified and referred to as (A) eligible stockholders, (B) noneligible holders of certificates of stock, and (C) noneligible subscribers for corporate stock. The trial court made its findings of fact and conclusions of law, directing judgment, as prayed for in the complaint, against class A, and in favor of classes B and C, dismissing the action on the merits as to them. Judgment was so entered, and the plaintiffs appealed from the judgment in favor of classes B and C.

No question is here made as to the liability of the defendants designated as class A,—that is, the eligible stockholders. There is no settled case or bill of exceptions in the record, and the question for our decision is whether the conclusions of law of the trial court and the judgment are justified by the facts found. The trial court found all the essential facts to sustain its conclusion that the stockholders of the corporation were liable to the amount of their stock for the debts of the corporation, but it also found, in legal effect, as a conclusion from the special facts found, that the defendants composing classes B and C were not stockholders.

The special facts upon which this conclusion was based were, concisely stated, these: Normanna is, and has been since January 6, 1886, a corporation duly organized under G. S. 1878, c. 34, tit. 3. The general nature of its business was, by its articles of incorporation, declared to be:

"The buying, leasing, and owning of real estate in the city of Minneapolis, county of Hennepin, state of Minnesota, and improv-

1 CANTY, J., took no part in the decision.

ing the same, erecting thereon such building or buildings, containing a hall or halls sufficient and convenient for the use of this association, and its members; and to lease, let, and rent to others for hire the said hall or halls, storerooms, or any and all parts of said building or buildings; provided, however, that no intoxicating liquors shall be sold on the premises; and to do any and all things necessary, expedient, and pertinent to the purposes and ends aforesaid; and to advance the interests of its members and the Norwegian residents of Minneapolis, Minnesota, and vicinity."

The capital stock of the corporation was fixed by its articles at $50,000, and the number of shares thereof at 5,000, of $10 each. Article 7 of its charter was this:

"No person shall be a stockholder in this corporation unless he or she be a Norwegian by nativity or lineage, or shall have been a Norwegian citizen, or speaks the Norwegian language, and is a resident of the city of Minneapolis or vicinity."

All of class A were eligible to membership under this article, but classes B and C were not; nor was the defendant John C. Oswald. The corporation, by its board of directors, February 29, 1887, adopted a resolution that shares in the corporation be sold to others than Norwegians, and thereafter solicited subscribers and sold stock to any and all classes who would buy, regardless of nationality or the language spoken by them. It does not appear that any persons to whom stock was issued ever objected to such action. Each of the defendants belonging to class B subscribed for one or more shares of the stock of the corporation, as particularly set forth in the trial court's findings of fact, and each paid the corporation in full for the shares subscribed by him, and the corporation issued to each of them a certificate of stock pursuant to and in compliance with his subscription, which he has ever since retained. Each and all of such defendants were duly notified of the semiannual meeting of the stockholders of the corporation, during the period of "their stockholding," which in each case was at least three years. Some of them, however, never attended any of the stockholders' meetings. The corporation was designated in some of the subscription contracts as "Normanna" and in others as "Normanna Hall Association," and its certificates of stock so issued were in form as follows:

"State of Minnesota. Normanna Hall Association. Capital stock, $50,000. This certifies that ——— is entitled to ——— shares of the capital stock of the Normanna Hall Association. Transferable only, with consent of the board of directors, on the books of the association, in person or by his lawful attorney, upon the surrender of this certificate. Witness the corporate seal of said association at Minneapolis, this ——— day of ———, A. D. 18—."

This form of certificate was used, and none other, by the corporation Normanna as its certificate of stock, and each and all of the defendants of class B had notice that such certificate was the certificate used by the corporation as its stock certificate.

The defendant John C. Oswald subscribed for 25 shares of the stock of the corporation, and directed his agent to pay for it on demand. The agent did so, and the corporation issued a certificate of stock pursuant to the subscription, which was accepted by the agent and placed in Oswald's safe, where it remained until the trial of this action; but he did not in fact know that the certificate had been issued. He was, however, duly notified of all of the meetings of the stockholders of the corporation for a period of at least seven years. At the time he subscribed for stock he supposed he was making a donation to the corporation, and not subscribing for stock. All of the unpaid debts of the corporation were contracted subsequent to the issuing of the stock to class B and to the defendant Oswald.

The defendants composing class C signed a stock-subscription contract, but no certificates of stock were ever delivered or tendered to any of them until after the corporation made an assignment in insolvency for the benefit of its creditors. One of such defendants, George H. Fletcher, paid his subscription before the assignment by the corporation. The assignee of the corporation tendered to the defendant Loren Fletcher a stock certificate for the amount of his subscription, which he refused to accept on the ground that he had not, as he claimed, subscribed for any stock, but had agreed to donate the amount of his subscription to the corporation. Thereupon the assignee demanded of him the amount of his subscription, which he paid as a donation, and the assignee wrote on the subscription agreement, in connection with the signature of the defendant, these words: "Paid $250 as a donation, but not for shares

77 M.—8

of stock, as it was the understanding of both parties to the contract that it was a mere gift." The defendant Philip B. Winston of this class never paid anything on his subscription agreement. None of the defendants in class C was eligible to membership in the corporation, under the provisions of article 7 of its charter. There is no finding that any of the unpaid debts of the corporation were contracted subsequent to the stock subscription by class C.

The plaintiffs claim that the corporation was organized under title 2, c. 34, G. S. 1878, and the defendants here contesting their liability claim that it was organized under title 3 of the chapter. The question as to which of the two titles the corporation was organized under was earnestly and fully discussed in the respective briefs of counsel, but it is immaterial in this case under which title the organization was effected; for each stockholder in any corporation, except those organized for carrying on a manufacturing or mechanical business, is liable for the debts of the corporation to the amount of stock held or owned by him. Const. art. 10, § 3. Counsel for plaintiffs seem to assume that, if the corporation was organized under title 2, the article of its charter prescribing a test of membership would be simply surplusage. We are not referred to any statute which directly or by implication forbids corporations organized under title 2 from providing in their articles of incorporation qualifications for membership. It is not difficult to conceive of cases where such a limitation of membership might be desirable,— for example, corporations for the handling and marketing of farm products by the producers. In the absence of a statute to the contrary, the right to membership in a corporation may be restricted by express provision of its charter. 1 Morawetz, Priv. Corp. § 35. We therefore hold that the limitation of membership in the charter of the corporation Normanna was valid, even if it be conceded that the corporation was organized under title 2.

But the restriction of membership was for the sole benefit of the corporation. It was not a limitation upon its power for the protection of the public. There was nothing contrary to good morals or public policy in the act of the corporation in receiving into its membership non-Norwegians. The contesting defendants were in fact received as members and stockholders of the corporation.

They subscribed and paid for their stock, and accepted the certificates therefor, and permitted themselves to be held out as qualified stockholders for three years or more, and until debts were contracted and the corporation became insolvent. They are now estopped, as against creditors, from claiming that their admission to the corporation as stockholders is invalid. If creditors were chargeable with notice of the membership test contained in the charter of the corporation, much more so were the defendants when they accepted and paid for their stock. The creditors could not know that the parties appearing by the books of the corporation to be eligible stockholders were not such in fact; but such stockholders knew it. The creditors had a right to assume that the question of the eligibility of these stockholders had been passed upon by the directors of the corporation, and that they were found to be qualified. Creditors trusting the corporation subsequent to the time these defendants became stockholders are presumed to have done so upon the credit of those who appeared by the records of the corporation to be in fact stockholders.

This is not a case where the corporation had no power, under any circumstances, to issue its stock, but it is a case where the corporation, by its directors, had the power to issue the stock, and admit the holders thereof to membership in the corporation, if found to possess the necessary qualification. This case, then, is simply this: The defendants subscribe, pay for, and accept stock in the corporation, and for three years they enjoy all the rights, privileges, and advantages of membership in the corporation, and permit themselves to be held out as stockholders to those dealing with the corporation. Debts are contracted, presumably on the faith of their liability as stockholders, the corporation becomes insolvent, and then for the first time the claim is made that they are not, and could not be, stockholders, because they were not eligible to membership. It is clear that by their acts and their silence they are estopped, as to subsequent creditors, from now pleading that they are not stockholders as represented. Olson v. State Bank, 67 Minn. 267, 69 N. W. 904; Veeder v. Mudgett, 95 N. Y. 295. It follows that the defendants composing class B are liable in this action for the debts of the corporation to the amount of stock held by them.

The defendant Oswald must be added to this class, for his case, in principle, does not differ from the others. He left the matter to his agent, and it is immaterial whether he knew or not that the stock had been actually issued to him. The effect on creditors would be the same in either case. Besides, he was notified twice a year for seven years of the meetings of the corporation.

The findings of fact as to class C, the subscribers to the capital stock of the corporation, are not sufficient to establish a liability on their part on the ground of estoppel. It is only necessary to refer to the facts in support of this conclusion.

It follows that the conclusion of law of the trial court, to the effect that the defendants composing class B, who are the parties named in subdivision 12 of its findings of fact, and the defendant Oswald, were not liable for the debts of the corporation, was erroneous. In all other respects its conclusions of law were correct.

The judgment appealed from must therefore be reversed as to the defendants in class B, and as to the defendant Oswald, and the cause remanded, with directions to the district court to amend its conclusions of law so as to charge such defendants, as stockholders, for the debts of the corporation to the amount of their stock, respectively, and enter judgment against them accordingly. As to the other defendants, the judgment must be affirmed. So ordered.

