## TURNER v. CATTLEMAN'S TRUST CO. OF FT. WORTH. (No. 95-2918.)

(Commission of Appeals of Texas, Section B. Nov. 5, 1919.)

1. CORPORATIONS ⊨60—"CAPITAL."

The term "capital" designates that portion of the assets of a corporation, regardless of their source, which is utilized for the conduct of the corporate business 'and for the purposes of deriving therefrom the gains and profits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

2. CORPORATIONS ⊨65—OWNERSHIP OF TANGIBLE PROPERTY.

The tangible property belongs to the corporation, the stockholders owning merely intangible interests in the corporate business.

3. CORPORATIONS ⊨65—"SHARES OF STOCK."

Shares of stock are the intangible interests in the corporate business owned by the individual shareholders.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Share of Stock.]

4. CORPORATIONS ⊨65—STOCK PRIOR TO ISSUANCE.

The stock of a corporation prior to issuance is the common property of the incorporators.

5. CORPORATIONS ⊨94—STOCK; OWNERSHIP ON ISSUANCE OF CERTIFICATE.

Upon issuance of a certificate to subscriber, evidencing the definite interest in the common fund existing in the individual, the possession of the stock evidenced by the certificate does not pass from, but is retained by the corporation, the certificate being simply the evidence in the hands of subscriber on which he may be able to base an assertion of interest in the common fund.

6. EXECUTION ⊨29—CORPORATE STOCK SUBJECT TO LEVY.

Title to certificate of stock may not carry with it title to the stock itself, and the stock remaining in possession of corporation may be subjected to the satisfaction of process by third parties seeking to appropriate it to the payments of the debts due by the shareholder.

7. CORPORATIONS ⊨170 — STOCK SUBSCRIPTION; RELATION OF STOCKHOLDER.

In order to bring into existence by subscription to stock the relationship of stockholder to corporation, there must be some sort of contract in which the subscriber obtains the right to demand and exercise the privileges of a shareholder.

8. CORPORATIONS ⊨94—STOCK; ISSUANCE OF CERTIFICATE NOT NECESSARY.

Issuance of certificate is not essential in order to create relation of shareholders, which may arise by reason of the contract duly made, and to vest in the subscriber the privileges attendent upon relationship of stockholder, which he may exercise and enjoy with the consent of the company.

9. CORPORATIONS ⊨94 — "CERTIFICATE OF STOCK"; NATURE.

The certificate of stock is not the stock, but is only evidence in the hands of the shareholders that the corporation recognizes him as owning an interest therein, and is not necessary to the existence of the stock nor to the transfer of it by shareholder.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Certificate of Stock.]

10. CORPORATIONS ⊨129 — TRANSFER OF STOCK; NECESSITY OF ENTRY ON BOOKS.

The stock, being in the possession of the corporation, is transferable only on its books upon presentation of proper evidence of a transfer of ownership.

11. CORPORATIONS ⊨162 — LIEN ON STOCK FOR DEBTS DUE CORPORATION.

Corporation may, by contract with stockholder, acquire a lien on the stock for debts due the corporation by the stockholder.

12. CORPORATIONS ⊨170—STATUS AS STOCKHOLDER EVIDENCED BY EXERCISING PRIVILEGES.

Subscriber for stock, by exercising privilege of attending and voting at stockholders' meetings, of holding positions of trust in corporation, and receiving dividends, manifests recognition of ownership of stock.

13. CORPORATIONS ⊨170—STOCKHOLDER; RECOGNITION BY CORPORATION.

Corporation, by accepting stock subscription, by recording subscriber as stockholder, by permitting him to attend and vote at stockholder's meetings, and by paying over to him dividends, manifests an intention to recognize him as a stockholder.

14. CORPORATIONS ⊨171 — OWNERSHIP OF STOCK; STOCK BOOK AS EVIDENCE.

That person's name appears upon stock book as owner of stock is evidence of ownership.

15. CORPORATIONS ⊨99(1)—ISSUE OF STOCK; NECESSITY OF CONSIDERATION.

Constitutional provision prohibiting corporation from issuing stock except for money paid, labor done, or property received, applies not only where certificate has been issued, but also where corporation recognizes subscriber as stockholder by permitting him to exercise rights of a stockholder.

16. EVIDENCE ⊨461(1) — PAROL EVIDENCE TO CONSTRUE CONTRACT.

In construing stock subscription contract, which clearly evidences agreement to buy and sell the stock, representations of corporation's agent are inadmissible to show parties' intent, in absence of pleading and proof that there were stipulations entering into the contract which were omitted from agreement by mistake, accident, or fraud.

17. CORPORATIONS ⊨171 — STOCKHOLDERS; STATUS TO BE DETERMINED BY CONTRACT.

In ascertaining whether subscriber became stockholder, the intention of the parties at the time subscription was taken and accepted must

be determined from the facts as they may be affected by the subsequent conduct of the parties.

**18. CORPORATIONS ⚖══92—STOCK; NOTE FOR SUBSCRIPTION ILLEGAL.**

Where stock subscription contract, whereby subscriber gave note to corporation and made no cash payment, contained proxy authorizing named person to vote at stockholders' meetings, and referred to "amount paid" and to "sale price of the stock herein purchased" and where collateral agreement was entered into whereby the "stock" was taken as collateral security for subscriber's note, and where corporation issued certificate to subscriber, entered subscriber's name on stock book, and thereafter recognized subscriber as a stockholder, the note was unenforceable, the transaction being in violation of constitutional provision prohibiting issuance of stock except for money, labor or property.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Cattleman's Trust Company of Ft. Worth against Robert Turner. Judgment for defendant reversed by Court of Civil Appeals (182 S. W. 438), and defendant brings error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

Madden, Trulove, Ryburn & Pipkin and W. H. Kimbrough, all of Amarillo (Kimbrough, Underwood & Jackson, of Amarillo, of counsel), for plaintiff in error.

A. H. Kirby, of Ft. Worth, for defendant in error.

SADLER, J. For a complete statement of the case we refer to the opinion of the Court of Civil Appeals, 182 S. W. 438.

It appears from the findings of the appellate court that there is no material dispute with reference to the evidence. The opinion of that court, as we interpret it, practically is a holding that under the undisputed facts, as a matter of law, the original contract of subscription did not evidence the intention of the parties to be that the corporation should accept the notes of Turner in payment for stock and issue to him its stock upon the faith of the notes; also that the undisputed facts did not, as a matter of law, show that the corporation did accept the subscription of Turner and accompanying notes with the purpose of issuing therefor its stock and acceptance of the notes in payment. Nor did the facts in law evidence the issuance on the part of the corporation of the stock to Turner as a contemporaneous part of the original subscription and in consideration for the notes.

In order to a correct understanding of the matters involved in the question under discussion, it becomes proper to recur to the law governing subscriptions for stock and the relationship of shareholders and the corporation to each other.

The authorities are practically a unanimity in holding that the "capital stock of a corporation is the fund, property, or other means contributed, or agreed to be contributed, by the shareholders as the financial basis for the prosecution of the business of the corporation, such contribution being made either directly through stock subscription, or indirectly through the declaration of dividends.

[1] "The term 'capital' is used to designate that portion of the assets of a corporation, regardless of their source, which is utilized for the conduct of the corporate business and for the purposes of deriving therefrom the gains and profits." 7 R. C. L. 165; Wright v. Georgia R. & B. Co., 216 U. S. 420, 30 Sup. Ct. 242, 54 L. Ed. 544; Smith v. Dana, 77 Conn. 543, 60 Atl. 117, 69 L. R. A. 76, 107 Am. St. Rep. 51; Tradesman Publishing Co. v. Wheel Co., 95 Tenn. 634, 32 S. W. 1097, 31 L. R. A. 593, 49 Am. St. Rep. 943.

Different persons in different rights are the owners of the property of a corporation and the shares of stock therein.

[2] The tangible property belongs to the corporation.

[3] The shares of stock are the intangible interests in the corporate business owned by the individual shareholders. 7 R. C. L. 166; Ohio Life Insurance & Trust Co. v. Merchants' Insurance Co., 11 Humph. (Tenn.) 1, 53 Am. Dec. 742.

[4] The stock of a corporation prior to issuance is the common property of the incorporators.

[5] Upon the issuance of a certificate evidencing the definite interest in the common fund existing in the individual, the possession of the stock evidenced by the certificate does not pass from, but is retained by, the corporation. The certificate is simply the evidence in the hands of the subscriber on which he may be able to base an assertion of interest in the common fund. However, the title to the certificate may not carry with it title to the stock.

[6] The stock remaining in the possession of the corporation may be subjected to the satisfaction of process by third parties seeking to appropriate it to the payment of the debts due by the shareholders. His possession of the certificate will not prevent, under appropriate orders, the title to the stock passing to his creditor. 7 R. C. L. 167; Ball v. Towle Manufacturing Co., 67 Ohio St. 306, 65 N. E. 1015, 93 Am. St. Rep. 682.

[7] In order to bring into existence the relationship of stockholder to a corporation there must be some sort of contract in which the subscriber obtains the right to demand and exercise the privileges of a shareholder. 7 R. C. L. 182; Butler University v. Scoon-

over, 114 Ind. 381, 16 N. E. 642, 5 Am. St. Rep. 627.

[8] But the issuance of a certificate is not essential in order to create the relation of shareholder, which may arise by reason of the contract duly made, and to vest in the subscriber the privileges attendant upon the relationship of stockholder which he may exercise and enjoy with the consent of the company.

[9] The certificate is not the stock, but is only evidence in the hands of the shareholder that the corporation recognizes him as owning an interest therein. The certificate is not necessary to the existence of the stock, nor to the transfer of it by the shareholder.

[10] The stock, being in the possession of the corporation, is transferable only on its books upon presentation of proper evidence of a transfer of ownership. 7 R. C. L. 182; Pacific National Bank of Boston v. Eaton, 141 U. S. 227, 11 Sup. Ct. 984, 35 L. Ed. 702.

[11] It seems to be clear that no lien existed under the common law in behalf of a corporation on the stock for debts due to it by shareholders. The creation of this lien by contract, however, appears not to be inhibited. 7 R. C. L. 177; Bankers' Trust Co. v. McCloy, 109 Ark. 160, 159 S. W. 205, 47 L. R. A. (N. S.) 333.

[12] There are other general principles that should be recalled in the discussion of the questions presented in this case. There are certain rights, powers, and privileges that accrue to a stockholder in a corporation, the exercise of which are but manifestations of the intention on the part of the shareholder in reference to his attitude towards ownership of the stock, such as the right to attend stockholders' meetings and vote on matters under consideration by shareholders; the right to hold official position of trust in the corporation; and the right to receive dividends from the profits and gains made by the common fund. The exercise of these rights by the stockholder is a manifestation of his recognition of ownership of stock in the corporate enterprise.

[13] So, also, on the part of the corporation. There are certain concessions which it makes to a shareholder that go to manifest its intentions. For instance, the acceptance of the subscription contract; the entry upon its stockbook of the subscriber as a shareholder; the permission accorded to him of attending shareholders' meetings and voting in matters relative to the management of the corporation—exercising directory judgment of his choice in the selection of agencies who may act for him and for the corporation in the management of its business; setting aside and paying over to him the proportionate shares of the profits and gains of the corporation to which he may be entitled by reason of his status as a stockholder.

215 S.W.—53

All these matters are of importance in determining whether or not in the instant case the contract of subscription—which includes the proxy of the subscriber, the notes covering the subscription, and the collateral assignment—evidence the respective intentions of the parties with reference to the status of the subscriber in relation to the issuance of the stock. Ann. Cas. 1913C, 421; 7 R. C. L. 280, 324; Commonwealth v. Dalzell, 34 Am. St. Rep. 640; 7 R. C. L. 327; Royal Consolidated Mining Co. v. Royal Consolidated Mines Co., 137 Am. St. Rep. 165; In re Long Island Ry. Co., 32 Am. Dec. 429.

It seems to be the rule in some jurisdictions that, where a corporation has been organized, upon the acceptance of a stock subscription by it the relationship of stockholder is created. 7 R. C. L. 274; Blien v. Rand, 77 Minn. 110, 79 N. W. 606, 46 L. R. A. 618; note Ann. Cas. 1913C, 419; 1 Thompson Corporation (3d Ed.) § 551, p. 660; Railway Co. v. McCormick, 71 Am. Dec. 337; Kentucky Insurance Co. v. Jenks, 5 Ind. 96.

[14] Where the name of a shareholder is made to appear upon the stockbook of a corporation as the owner therein, it becomes evidence of ownership. 7 R. C. L. 275.

This brings us to a consideration of the facts bearing upon the question of whether or not the stock involved in this litigation was issued.

[15] It has been very earnestly insisted that the inhibition of the Constitution has in contemplation the issuance of the certificate evidencing the recognition of ownership of stock. We are inclined to the view that the constitutional prohibition is broad enough to cover, not only the certificate, but the actual recognition or the origin of the rights of a stockholder which accrue to the subscriber. Were we to hold that the Constitution in its prohibition is limited alone to the ministerial act of writing up and delivering the certificate of stock, the evident purpose of the Constitution would be destroyed. Its evasion would be rendered easy. It would be necessary only for a subscriber to allow the stock to remain in the possession of the corporation without the issuance of a certificate evidencing, in his possession, ownership. All the rights which could possibly accrue to him as the possessor of the written certificate already exist without it. The certificate is not a necessary prerequisite to the exercise by him of all the powers of stockholder, nor to the recognition by the corporation of an existence of these privileges in him and a permission to their exercise by him. As we construe the Constitution, it covers not only the certificate which may be put into circulation, but its ultimate and most effective force is to prohibit the exercise by the subscriber of the rights of a stockholder and the recognition on the part of the corporation of such right.

We therefore hold that the Constitution is effective as against the stock, whether treated as an intangible right in the common property, or as evidenced by a written certificate in the hands of the stockholder. That the stock in the hands of the corporation may be sold, transferred, or subjected to the obligations of the stockholder without the necessity of the certificate having been issued is in support of this view. The certificate is not the stock, and the title to the stock may be taken away from the shareholder, although he retains the certificate.

[16] An examination of the contract of subscription in the instant case clearly evidences that the corporation on its part was tendering for sale its stock, and that the subscriber on his part was buying the stock. We are of opinion that it is immaterial as to the representations which were made by the agent, and that they have no weight in this case in ascertaining the intentions of the parties. We think the authorities are clear that evidence as to contemporaneous agreements is not admissible to add to, take from, or vary the terms of the subscription contract in evidence. As a basis for such evidence it is necessary to plead and prove that there were stipulations entering into the contract which were omitted from the agreement by mistake, accident, or fraud; such is not presented either by the pleadings or the evidence in this record.

[17] We must determine the intention at the time the subscription was taken and accepted from the facts as disclosed by the writings as they may be affected by the subsequent conduct of the parties. 7 R. C. L. 197; Gelpcke v. Blake, 15 Iowa, 387, 83 Am. Dec. 418; notes 136 Am. St. Rep. 744; 3 L. R. A. 798; 48 L. R. A. 507; Equitable Loan, etc., Co. v. Waring, 62 L. R. A. 93; Keller v. Eurika Brick Mfg. Co., 11 L. R. A. 472; New Albany, etc., Ry. Co. v. McCormick, 71 Am. Dec. 337; Commonwealth v. Peebles, 23 L. R. A. (N. S.) 1130; Fish v. Smith, 84 Am. St. Rep. 161.

[18] The subscription contract contains within it a proxy to A. L. Camp, conveying authority to vote the stock. The necessity for creating a proxy cannot be apparent when viewed from the standpoint that the intention was not to recognize the subscriber as a stockholder. The very fact that the proxy is given manifests a purpose on the part of the subscriber to exercise the privileges of a shareholder in the corporation in the management of its business. The contract further treats the subscription as a sale, since it provides "that the company reserves the right to reject this subscription within twenty days from receipt thereof and return to the subscriber the full amount paid said company; and, further, that twenty-five per cent. of the sale price of the stock herein purchased is to be, and will be, ex-

pended for organization and promotion expenses." This manifests a clear treatment of the transaction by the parties as a payment, sale, and purchase of the stock for which the subscription is made, in the manner evidenced by the notes and collateral agreement forming a part of the subscription contract. It is not necessary to go outside of the contract to determine the present intention of the parties as shown therein. The acceptance of the contemporaneous collateral agreement bears strongly on the intent to accept the subscriber as the owner of stock to the extent of the subscription. The very collateral agreement itself provides that the stock is taken as collateral security for the note this day given for the stock. It shows the intention of the parties to treat the notes as paying for the stock, and not to treat the note as an evidence of the obligation arising under the contract of subscription, and fixing the day upon which the subscribed amount should be paid. The collateral contract further provides that the subscriber delivers to the corporation the 500 shares covered by the subscription contract.

How, then, is it possible to say it was not intended on the part of the parties that the subscriber by the contract should become, upon acceptance by the corporation, a stockholder in the corporation, to whom should pass the right of title in the stock, and who returned that right to the corporation only so far as same might be necessary in satisfying the collateral obligation?

It appears in the collateral contract that the parties clearly intended that the stock mentioned in the subscription should be subject to sale. How would it be possible to sell the stock if it were not to be issued—that is, if the subscriber were not to be treated by the corporation as being the possessor of a pro rata interest in the funds of the corporation upon the acceptance by it of the subscription contract?

We take it that the contract of subscription itself contains within itself the evidence showing that it was the fixed intention and purpose of the parties to it that upon its acceptance by the corporation it should be in completion of a sale and purchase; that the subscriber should become immediately the owner of 500 shares of stock in the corporation; and that the notes taken should be the payment which he should make for that interest. We believe we are fortified in this position by the further terms of the contract wherein it is shown that the note shall bear interest from date until paid at the rate of 8 per cent. per annum. It provides that the drawers and indorsers severally waive presentation for payment, protest, and nonpayment of this note, and then it provides for the change of interest from 6 per cent. to 8 per cent.

We are of opinion that the contract of sub-

scription evidences the intent and purposes of the parties in such manner as to bring it clearly within the inhibition of the Constitution and render it as between the parties non-enforceable.

However, if we are in error with reference to the construction given to the contract, as it discloses the intent of the parties on its face, yet when the contract, in all of its terms and stipulations, is read in the light of its interpretation by the parties as shown by their subsequent conduct, we are driven irresistibly to the conclusion that such intention is shown.

In the interpretation of a written contract sometimes, and in fact quite often, the intention of the parties can best be gathered from the acts done by them in the performance of the terms of the contract as these acts may be interpreted under the law applicable to them. After the execution and delivery of this subscription contract we find that the parties performed acts inconsistent with the view maintained by the defendant in error, and consistent with the intention which we have gathered from the contract.

The evidence shows that on the very day of the acceptance of the subscription the corporation entered on its stock book the subscription of Turner for stock, and showed payment in notes; that is, the entry appears "Paid in cash, none," followed by the entry of the payment made in notes.

The entry of this subscription in the stock book is prima facie evidence of ownership by the subscriber of stock in the corporation. 7 R. C. L. 327; Royal Consolidated Mining Co. v. Royal Consolidated Mines Co., 157 Cal. 737, 110 Pac. 123, 137 Am. St. Rep. 165; In re Long Island Ry. Co., 19 Wend. (N. Y.) 37, 32 Am. Dec. 429.

The corporation immediately caused a certificate for the stock to be written up. Its stubbook showed the issuance of the certificate. The certificate, as written, bore indorsements evidencing recognition of ownership by Turner. 7 R. C. L. 182.

In further recognition of ownership of the stock on the part of Turner the certificate was attached to the note, and thereafter he was permitted to appear and vote the stock through his proxy, and exercise the rights, privileges, and powers of a stockholder. He was permitted by the corporation to participate in the distribution of the dividends which the common property had earned. His dividends were appropriated under the collateral agreement as credits on the note. These acts of the corporation are capable of no other construction than that of a recognition by it of Turner as a stockholder, and as manifestly carrying out the intention of the parties to the contract of subscription.

We are therefore clearly of the opinion that, under any view of this record, a trans-action falling within the denouncement of the Constitution is apparent on the facts as a matter of law.

We respectfully recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

MONTGOMERY, P. J., did not participate in the consideration of this case.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes