

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD MANN
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Wm. J. Lawson
Secretary of State
Austin, Texas

Dear Sir:

Attention: Will Mann Richardson

Opinion No. 0-4097
Re: The validity of self-executing
stock retirement provisions in
corporate charters.

This department has received your request for our opinion. We set out below the body of your letter.

"The original charter was issued to the Waples-Platter Grocery Company November 30, 1891, with an authorized capital stock of $150,000. Various increases of capital stock were accomplished by charter amendment until on July 15, 1913, the authorized capital stock, by amendment filed that day, was increased to $1,500,000.00.

"At a meeting of the shareholders and directors at Denison, Texas, on July 26, 1928, it was decided to amend the charter, changing the name of the corporation to Waples-Platter Company and increasing the capital stock to $2,000,000.00, 'making the additional $500,000.00 capital stock all preferred, without voting power, which preferred capital stock shall be of the par value of $100.00, and shall bear interest at the rate of six per cent per annum, with the option on the part of the corporation to retire same at any dividend paying period.'

"On July 30, 1928, the amendment authorized at the Director's meeting on July 26, 1928, was filed with the Secretary of State and after providing for the change of the corporate name and for the increase of the authorized capital stock, reserved 'the right on the part of the corporation to retire said preferred stock at par at any dividend paying date.' The amendment contained the certificate of the officers of the corporation to the effect that the authorized increase had been subscribed and that all of same had been fully paid in with lawful money.

"The records of the Secretary of State's office reflect that the Waples-Platter Company in its franchise tax report, for the year

ending December 31, 1928, reported an authorized capitalization of Two Million Dollars and paid the tax thereon. Thereafter, and on May 25, 1929, at a meeting of the shareholders and directors of the Waples-Platter Company, it was voted that the provision for preferred stock contained in the charter amendment of July 30, 1928, be eliminated, and 'that the action of the shareholders and directors in time past in cancelling the subscription to such preferred stock be ratified and confirmed.' The same resolution instructed the directors to change the charter of the corporation to conform to the terms of the resolution, but no amendment was filed with the Secretary of State at that time.

"At a meeting of the shareholders and directors on the 22nd of January, 1935, a resolution was passed in which it was recited that the amendment of July, 1928, had authorized an increase of the capital stock of 5000 shares of preferred stock but that the resolution of the shareholders and directors on May 25, 1929, by mutual consent of the subscribers, shareholders and directors, had rescinded the subscription to said stock and cancelled same; that the charter had never been amended conforming to the terms of the resolution that had been passed; and directing the officers and directors to certify to the Secretary of State that the charter of the corporation be amended. On February 14, 1935, the officers certified to the Secretary of State the amendment to the charter reciting the various steps that had been taken and setting out that 'after A. F. Platter and L. H. McKee had paid in the sum of $250,000.00 each on their subscription, it was deemed to the best interest of the corporation that all the stock be common stock and that the preferred stock be eliminated and that by consent of all shareholders, common and preferred, the subscriptions to said preferred stock were cancelled and the money restored to the subscribers.' It was then provided in the amendment that the reduction of the capital stock to $1,500,000.00 be reflected and that the provision in the charter for the issuance of the preferred stock be eliminated.

"After the action of the shareholders and directors on May 25, 1929, the franchise tax reports filed by the corporation reflected an authorized capitalization of $1,500,000.00 only, and the franchise tax was computed on that basis. These sums were

accepted by the Secretary of State each year from 1929 to 1941. On January 17, 1941, this office called upon the Waples-Platter Company for additional tax for all years after 1928 and until the amendment of the charter was filed in 1935, upon the theory that the subscribed capital stock during that period was $2,000,000.00 and that the action of the corporation in calling in and cancelling the preferred stock in May, 1929, did not affect a reduction of the capital stock of the corporation insofar as the franchise tax due the State was concerned.

"It is the position of the attorneys for the Waples-Platter Company that the provision in the charter amendment of July 30, 1928, for the retirement and cancellation of the preferred stock was and is a valid provision affording a legal method by which to reduce the authorized capitalization of the corporation and that the effect of the acts of the corporation hereinbefore set forth was to take advantage of the provisions of its charter and reduce the authorized capital of the corporation by cancelling the 5000 shares of preferred stock.

"It is also their contention that in view of the provisions in the 1928 amendment, reserving to the corporation the power to cancel and retire the preferred stock, it was unnecessary that the charter of the corporation be thereafter amended to reflect the reduction. This view of the effect of the action of May 25, 1929, renders the amendment of 1935 unimportant except insofar as it evidences the intention of the Board of Directors that the preferred stock called in and cancelled should never again be reissued. Said attorneys think this amendment was unnecessary because the preferred stock, once having been retired, with the consequent reduction of authorized capital, the corporation would have had no power thereafter to reissue such preferred stock.

"This department has always held that an amendment did not become effective, to reduce the capital stock of a corporation, until the actual amendment drawn up in accordance with the Statutes was filed. The department has never felt that a provision in the charter allowing the corporation the right to retire preferred stock would nullify the statutory requirements for decreasing the capital stock of a corporation. If a corporation has the right to insert such provisions in its charter it could change the requirement that two-thirds of the voting stock authorize

the decrease, and in like manner might provide for a dissolution by less than four-fifths of the stockholders. Such provisions, however, are contrary to our Statutes and this Department does not feel that they should be given effect. The language in the particular case would allow the corporation to retire preferred stock but this Department feels that such stock upon retirement became treasury stock and was taxable until the amendment was filed. The mere act of retiring the stock (which in this case was cancelled rather than retired) would not decrease the authorized capital according to the interpretation of this Department.

"The question presented is one that has not heretofore been passed upon by this Department or by the Attorney General. In view of the fact that preferred stock retirement provisions are commonly used in drafting corporate charters and amendments thereto, we feel that any question as to the validity of such a charter provision should be submitted to the Attorney General for determination.

"The charter amendment of July 30, 1928, reserving 'the right on the part of the corporation to retire said preferred stock at par at any dividend paying date,' is attached hereto, as well as the pertinent resolutions of the shareholders and directors of the Waples-Platter Company.

"We believe that the following legal questions are presented and must be answered by you in order to determine the franchise tax liability of this corporation:

"First: Is the provision in the charter amendment of July 30, 1928, reserving the right on the part of the corporation to retire the authorized preferred stock at any dividend paying date, a valid provision?

"Second. Under the facts and circumstances related above, was the action of May 25, 1929, effective to cancel and retire the preferred stock, thereby decreasing the capital stock for franchise tax purposes?

"In order to facilitate the answering of these two legal questions, I am attaching hereto a brief prepared by the attorneys representing Waples-Platter Company."

Article 1304, Revised Civil Statutes, provides what a corporate charter must contain. Section 6 of that Article reads:

" * * *

"6. The amount of its capital stock, if any, and the number of shares into which it is divided."

Article 1330, Revised Civil Statutes, as amended, Acts 1931, 42nd Legislature, Page 78, Chapter 51, Section 1, stipulates how a corporation may increase its capital stock thusly:

"The Board of Directors or other managing officers of a corporation may increase its authorized capital stock, including the issuance of preferred stock, which stock shall have rights, powers, privileges and preferences as are now authorized by law, when empowered to do so by a two-thirds vote of all of its outstanding stock with voting privileges, at a special or regular meeting called for that purpose by complying with the provisions of Article 1308, and/or Article 1538-D, as the case may be. Par value stock, issued or unissued, may be converted into preferred stock in the same manner and subject to the same limitations as no par stock may be so converted under Article 1538-H, Revised Civil Statutes of 1925.

"Upon such increase or conversion of stock being made in accordance with such provisions and certified to the Secretary of State by the Directors, and, if the increase has been made in accordance with law, he shall file such certificate; and thereupon, the same shall become a part of the capital stock of such corporation. Such certificate shall be filed and recorded in the same manner as the charter. All preferred stock heretofore authorized to be issued, or issued, or stock converted into preferred shares, by vote of two-thirds of the outstanding stockholders, is hereby ratified, legalized and validated."

For the sake of brevity, we shall not set out Article 1308 but will simply say that it deals with the capital stock of a corporation, saying of what it may consist and requiring the filing of an affidavit with the Secretary of State relative the subscribers thereto.

Article 1332, Revised Civil Statutes, sets out corporate capital stock reduction procedure, as follows:

"A corporation may decrease its capital stock by such amount as its stockholders may decide, by a two-thirds vote of all its outstanding stock, in like manner as is required for an increase. No such decrease shall prejudice the rights of any creditor of such corporation in any claim or cause of action such creditor may have against the company, or any stockholder thereof. Such decrease shall not become effective until full proof is made by affidavit of the directors to the Secretary of State of the financial condition of such corporation, giving therein all its assets and liabilities, with names and postoffice addresses of all creditors and amount due each; and the Secretary of State may require, as a condition precedent to the filing of such certificate of decrease, that the debts of such corporation be paid or reduced."

In Fletcher's Cyc. of Corporations, Section 167, it is said:

"The right to be a corporation is not a natural or a civil right of any person, but it is the general rule that the creation of corporations is dependent upon the consent of the sovereign power.

" * * *

"In the United States a prerequisite to the right to become a corporation is the consent of the sovereign power, which is exercised by the legislative department of the state or territory, or by congress, as the case may be."

The right of regulation by the creating sovereignty naturally follows this power of creation. As a condition of the act of creation, the Legislature may impose upon the corporation any requirement, regulation, or restriction. This power is limited only by the Federal or State Constitution.

The terms of Article 1332, supra, expressly provide how the capital stock of a corporation may be reduced in this State. By the statute's enactment, the Legislature impliedly denied to the corporation any other method of reduction. The Legislature plainly revealed their intent.

The capital stock is that amount of money, or its kind, which the corporate shareholders put up for the purposes of the corporation. It is to be used to satisfy any obligations the concern may assume during its corporate existence. But, the capital stock is not for the convenience of the corporators alone. Another purpose, and most important it would seem, is that it serves as a source of information and provides security to the public at large. Section 6 of Article 1304, supra, requires that the charter of a corporation shall state the amount of the capital stock. The reason seems obvious. It represents a definite and fixed sum which cannot be increased or diminished at whim. This can be accomplished only by the prescribed statutory mode. See 5 Thomp. Corp., Sections 3408, 3686 and 3688; Turner vs. Cattleman's Trust (Com. App.), 215 S. W. 831.

"It is a general rule that where a statute gives a right and prescribes a remedy, the statutory remedy must be strictly pursued; hence, it follows that as there can be a reduction of the capital stock of a corporation only on express statutory authority, the method prescribed by the statute must be followed. For obvious reasons the law would not tolerate any secret or clandestine reduction of the stock; it must be done openly, and the public must have the same opportunity to know of such reduction as of knowing the original amount of the capital stock. Thus, the statutes in the several jurisdictions usually provide that any change in the amount of the capital stock of a corporation shall be made at a stockholders' meeting called for that purpose upon a notice specifying the object of the meeting and the proposed change. It has been suggested that the publicity required in such proceeding was for the purpose, in part, at least, of advising the public dealing with the corporation of the proposed change. Any secret contrivance or arrangement to produce a change in the capital stock is contrary to the usual statutory requirements, (a) that the certificate of incorporation shall state the amount of the capital stock, and (b) that any change in such capital stock shall only be made after extended public notice." 5 Thomp. Corp., Section 3688, Page 518 and 519, and cases cited.

It is not our intention to imply that the stock reduction in the situation before us was accomplished in a "secret or clandestine" manner; but, we believe the above quotation ably states the purpose or the motive behind our statutory requirements relative to the reduction of corporate capital stock.

It follows from that which foregoes, that this department is of the opinion that the action of the Board of Directors on May 25, 1929, did not legally reduce the capital stock of the Waples-Platter Company. Their purpose was not accomplished until the provisions of Article 1332, supra, were met and complied with, allegedly on February 14, 1935.

It is the contention of counsel for the company "that the provision in the charter amendment of July 30, 1928, authorizing the increase of the capital stock by the issuance of Five Hundred Thousand ($500,000.00) Dollars of preferred stock and reserving the right on the part of the corporation to retire the preferred stock at par at any dividend paying date, was and is a valid charter provision. Further, that under the terms of the corporate charter itself, a method of reducing the capital stock of the corporation was provided, rendering unnecessary any further amendment of the charter to reflect the reduction." To this, we shall say that no corporation can dispense with statutory prescriptions by charter provision. International Travelers' Ass'n. vs. Francis, 23 S. W. (2d) 282, 119 Tex. 1.

> "The rule is well settled that when a corporation is organized under a general law the law itself limits the powers of the corporation and the nature and extent of the corporate privileges; and the powers, privileges and immunities specified in the legislative act authorizing its organization cannot be added to or enlarged by the charter or other instruments. In all cases where there is conflict between the charter or articles of incorporation and the general law, the latter governs. But the mere fact that the powers enumerated -- in the regulations of the association, for example -- are in excess of those conferred by the general law, will not entirely invalidate the charter; the charter is valid as to the legitimate powers of the corporation and the enumeration of unauthorized powers is treated as surplusage." 1 Thomp. Corp., Section 190.

Counsel for the Company submits for our attention a Virginia case, Superior Steel Corp. vs. Commonwealth, 136 S. E. 666. In that case, the Supreme Court held that a corporate charter provision reserving to the corporation the right to redeem its preferred stock placed the franchise tax collection agency upon notice of a possible reduction in the taxable corporate capital stock; consequently, the commission was charged with the duty to make such investigation as might be necessary to ascertain with certainty "the authorized maximum capital stock which the corporation has the authority to issue at the time of the assessment."

The Virginia case does not control the situation which confronts us. The applicable statute in this State is quite different from that which rules the Virginia instance. Article 1332, supra, specifically states that a reduction or decrease in the capital stock of a corporation "shall not become effective" until the required proof is presented to the Secretary of State through the medium of an affidavit. (Underscoring ours)

We shall now answer your questions, numerically, as presented.

First: The provision in the charter is not invalid in the strict sense of the word. Rather, it is of no force or effect, unless, accompanied by proper corporate acts constituting a compliance with the statutes of this State.

Second: On the facts before us, our answer is in the negative.

We believe that this fully answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Wm. J. Fanning_
Wm. J. Fanning
Assistant

By _Grundy Williams_
Grundy Williams

APPROVED OCT 30, 1941
_Grover Sellers_
GROVER SELLERS

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE

By   BWB
Chairman