PRESNALL et al. v. STOCKYARDS NAT. BANK.

(Court of Civil Appeals of Texas. Texarkana. Nov. 21, 1912. Rehearing Denied Dec. 5, 1912.)

1. BANKS AND BANKING (§ 134*)—BANK DEPOSIT—BANK'S RIGHT OF SET-OFF.

. Where, at the time a garnishment was served on defendant bank, it held for the debtor a balance of $777.89 to the credit of his general account, the fact that the debtor was a nonresident of the state and was indebted to

the bank on notes not due did not authorize the bank to credit such balance on the indebtedness as against the plaintiff in garnishment.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 353–374; Dec. Dig. § 134.*]

2. GARNISHMENT (§ 29*)—PROPERTY SUBJECT —PERSONAL PROPERTY—EQUITY OF REDEMPTION.

Where a debtor's equity of redemption in mortgaged cattle was pledged to a bank for a loan, and such equity when liquidated by a sale of the cattle amounted to less than the amount due the bank, it was not subject to a prior garnishment against the bank.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 47, 50, 74, 98, 100; Dec. Dig. § 29.*]

3. CORPORATIONS (§ 174*) — "SHARES OF STOCK."

"Shares of stock" in a corporation are the aliquot parts of the corporation's capital, and merely give to the owner the right to a share of the profits of the corporation while a going concern and in its assets in case of dissolution. They give the owners no right in the property of the company as such, and the share certificates are a mere symbol or evidence of property, standing on the same footing as other muniments of title.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 649–652; Dec. Dig. § 174.*

For other definitions, see Words and Phrases, vol. 7, pp. 6477–6480.]

4. GARNISHMENT (§ 27*)—CORPORATE STOCK—SERVICE.

Rev. Civ. St. 1911, art. 3745, provides that the shares of stock in a corporation are subject to levy and sale under execution. Article 3742 provides that the levy is made by leaving a notice with any officer of the company, and article 296 declares that the "share or interest of the defendant" in a corporation shall be subject to garnishment. Held, that the interest of the stockholder subject to garnishment was his rights in the corporation as distinguished from his share certificate, and hence, where a stockholder assigned his certificate to a bank as security for a loan, his corporate interest could not be subjected to garnishment by serving garnishment notice on an officer of the bank.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 45, 46; Dec. Dig. § 27.*]

5. GARNISHMENT (§ 191*) — GARNISHEE — HEARING—COSTS AND ATTORNEY'S FEES.

Where a garnishee answered setting up title in itself to property of the debtor in its hands, it became a party litigant and, on being cast, was not entitled to costs and attorney's fees.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 372–379; Dec. Dig. § 191.*]

Appeal from District Court, Tarrant County.

Garnishment proceedings by P. A. Presnall and others against the Stockyards National Bank, garnishee. Judgment for defendant, and plaintiffs appeal. Reversed.

The appellants, P. A. Presnall and S. B. Mossner, obtained a judgment in the district court of Nueces county against Hugh Rogers for the sum of $1,921.90 with 10 per cent. interest. An execution was issued on May 28, 1908, and returned nulla bona. Thereafter on January 16, 1909, the appellants applied for a writ of garnishment, which was issued and served on the Stockyards National Bank

of Ft. Worth on January 20, 1909. The garnishee made answer on July 5, 1909, in which the garnishee denied any indebtedness to Hugh Rogers, but alleged that Hugh Rogers owed it two notes; one note being for $2,500, on which $900 had been paid, and which was secured by certificate of shares of stock of the Barse Commission Company of the value of $2,000, and the other note being for $2,000, on which had been paid $777, and which was secured by a transfer to the bank of Rogers' equity of redemption in certain live stock owned by Nails & Rogers on Royer Ranch in Murray county, Okl. Appellants filed a controverting affidavit charging that Rogers had on deposit in the bank at the time the writ of garnishment was served the sum of $777.89, and that the bank held as collateral security certificate of shares of stock in the Barse Commission Company owned by Rogers of the value of $2,000 and an assignment of Rogers' equity of redemption in a mortgage on 2,000 head of cattle and 130 head of horses; and alleging that Rogers, since the writ of garnishment was served, had fully paid off and discharged the garnishee's notes without the application of the collateral security to the payment of the debt, and that the garnishee had voluntarily released and surrendered and delivered to Rogers, after service of the writ, his certificate of shares of stock in the Barse Commission Company, and that the garnishee had permitted the cattle to be sold by Rogers; and praying that the garnishee be made liable to appellants for the cash deposit and the value of the certificate of shares of stock in the Barse Commission Company, or so much as was necessary to satisfy the appellants' debt. The garnishee in reply admitted that at the time the writ of garnishment was served Rogers had on deposit in the bank the sum of $777.89, but alleged that Rogers was indebted to the bank at the time of the service of the writ on a $2,000 note, and that he was a nonresident of the state and had no property in Texas except that deposited with the bank, and that, as a consequence, and after the writ was served, the sum of the deposit was by the garnishee applied on the note as a credit; and further that Rogers had refused to pay his indebtedness unless the garnishee would first surrender the certificate of shares of stock held as collateral, and that by agreement with Rogers to pay his debt to the bank it surrendered to him the certificate of shares of stock in the Barse Commission Company. The cause was tried to the court without a jury, and judgment was entered in favor of the garnishee and also allowing it to recover of appellants $250 as attorney's fees.

The testimony in the record admits that when the writ of garnishment was served Rogers had a general deposit in the Stockyards National Bank of $777.89. Rogers was

indebted to the bank in the two notes mentioned in the pleading, neither of which had matured when the writ was served. One note was secured by an assignment of Rogers' equity of redemption in certain mortgaged live stock in the possession of Rogers in Oklahoma, and the other by a certificate for 20 shares of stock in the Barse Commission Company indorsed in blank. At the time the writ of garnishment was served, Rogers was a citizen of Oklahoma, and without property in Texas save that mentioned in the possession of the garnishee. The Barse Commission Company was a Missouri corporation, but had secured a permit under the laws of Texas to do business in Texas, and was at the time and has since been doing business in Texas. The certificate of shares of stock in the commission company held by the bank as collateral belonged to Rogers, and was, it was agreed, at the time of the delivery to the garnishee, and has been ever since, of the value of $2,000. Rogers was not due the bank anything except the notes. Immediately after the service of the writ the bank applied the $777.89, without Rogers' authority, as a payment on the $2,000 note. After service of the writ, and after maturity of both notes, Rogers paid to the bank the balances due on both of the notes, upon condition that the bank deliver to him the certificate of shares of stock of the Barse Commission Company held by it; and the bank agreed to, and did, release and deliver the certificate of shares of stock, together with the canceled notes to Rogers. At the time the bank took the assignment of the equity of Rogers in the live stock in Oklahoma, the live stock was heavily mortgaged in Oklahoma. Rogers himself sold the live stock, and after paying the mortgage there was left from the proceeds of the sale of the same the sum of $501.75. This sum of $501.75 was the value of his assigned equity, and was applied by Rogers on the note held by the Stockyards National Bank.

Slay, Simon & Wynn, of Ft. Worth, for appellants. Wm. J. Berne, of Ft. Worth, for appellee.

LEVY, J. (after stating the facts as above). [1] By proper assignments of error the appellants contend that the court erred in rendering judgment for the garnishee, for the garnishee admitted that it held money and effects of the defendant Rogers at the time the writ was served, and by the undisputed evidence not showing any legal or equitable defense which entitled it as against the appellants to hold such money and effects. The several matters of contest were a general deposit in the bank of $777.89, an assignment of an equity of redemption in mortgaged cattle, and a certificate for 20 shares of stock in the Barse Commission Company, a private corporation. It is an admitted fact that, when the writ of garnishment was served

Hugh Rogers, the defendant in the original judgment theretofore obtained by plaintiffs had standing to his credit in the garnishee bank on general deposit the sum of $777.89. As against the right of the appellants to subject the deposit to garnishment, the garnishee set up and made the claim that it had the right to apply, and did so, the deposit as a credit payment on a note for $2,000 previously executed to it by Rogers, because Rogers was a nonresident of Texas and without property in this state save that in the possession of the bank. Rogers' note to the bank was not due at the time the writ was served nor at the time of the answer. Immediately upon the service of the writ of garnishment, the bank, through its president, transferred and applied, without authority of Rogers, the deposit as a credit on the Rogers note. It being an admitted fact that the defendant Rogers had on general deposit in the bank when the writ was served the sum of $777.-89, it would appear that the bank was indebted to the defendant in that sum at the time of the service of the writ. The appellants' garnishment lien attached when the garnishment writ was served on the bank, and as a consequence the appellants would be entitled to have the sum paid to them, unless the garnishee had a superior right or claim to it. As against the appellants' lien, the garnishee only predicates the right to hold the deposit debt to partly satisfy its unmatured note upon equitable grounds. The garnishee relies, as the record admits, on the bare fact that the defendant was a nonresident of this state. Rogers was, it appears, a nonresident of this state, and was at the time the note was made to the bank. The bare fact that the defendant was a nonresident of this state would not of itself afford a valid equitable ground for subordinating the appellants' legal lien to the garnishee's claim for set-off of the deposit as a credit on its note not due. If the garnishee's debt had been due and Rogers had been insolvent, or if Rogers had been insolvent in connection with the fact of nonresidence, such special circumstances might have formed the basis for invoking equity; but no such equity is relied on in the pleading or proof. Appellants' contention should be sustained that they were entitled to have judgment for the debt of $777.89.

[2] As to the equity of Rogers in the mortgaged cattle assigned to the bank as collateral security to the $2,000 note, the court, we think, correctly rendered judgment for the garnishee; and the ruling is sustained. It is an admitted fact that the assignment was subject to prior liens, and that the cattle were sold by Rogers, and that out of the proceeds of the sale of the cattle there was coming to Rogers, over and above the mortgage debt, the sum of $501.75 which was shown to be the value of the equity. Rogers testified, and it appears an admitted fact,

that he applied this $501.75 on June 4, 1909, which date was prior to the garnishee's answer, on the note as a credit payment, and the bank received it as such. Assuming for the moment that the assignment of the equity to the bank as security for the note was a subject-matter of garnishment, the garnishment would hold to appellants only the balance or surplus of the value of the equity after the debt of the bank it was pledged to secure was paid out of it. Carter v. Bush, 79 Tex. 31, 15 S. W. 167; Mensing v. Engelke, 67 Tex. 537, 4 S. W. 202. It being an admitted fact that there had been a sale of the cattle, and the equity reduced to money and applied as a credit on the note, and there was no surplus remaining, before the answer of the garnishee, the garnishee was entitled to judgment, for it was conclusively shown that there was no excess in the value of the property over the amount it was pledged to secure to be subjected to garnishment.

The next point involves the liability of the bank as the possessor at the time of the garnishment of the certificate for 20 shares in the Barse Commission Company assigned and deposited with it by Rogers as security for the $2,500 note. In the determination of the question it is merely assumed, without deciding the point, that the Barse Commission Company, the corporation issuing the certificate, has become so completely a resident of this state by coming into this state under its laws to do business, as that its stock may be garnished or levied upon in the mode prescribed by the statute. The question as to what classes of property or indebtedness may be reached by garnishment necessarily must depend upon the statute authorizing the issuance of the writ, as the remedy by garnishment is statutory. The statute makes shares of stock in any joint-stock or incorporated company a subject-matter of levy and sale under execution. Article 3745, R. S. The levy is made by leaving a notice with any officer of the company. Article 3742, R. S. With respect to shares in a corporation, under the garnishment statute it is the "share or interest of the defendant in such company" that is made of a garnishable character and subjected to sale under execution. Article 296, R. S.

[3] It is generally agreed that shares in an incorporated company are the aliquot parts of the capital stock, and merely give to the owner a right to his share of the profits of the corporation while it is a going concern and to a share of the proceeds of its assets when sold for distribution in case of its dissolution and winding up. The shares do not give to their owners any right in the property itself of the company. That remains in the artificial body called the corporation. The right of the individual shareholder, according to the amount put into the fund of the corporation, is therefore of an incorporeal nature, though of value, not capable of manual delivery. Considering that the share, or interest, of the owner in the corporation, is an incorporeal right, then the nature of a share certificate issued by the corporation, as here in controversy, is merely the symbol, or paper evidence, of property, and stands on a similar footing with that of other muniments of title. 2 Thompson on Corp. § 2348; Burrall v. Railway Co., 75 N. Y. 211.

[4] Following the principle that a share certificate is merely the written evidence of the existence of shares and the ownership of them, then a levy of execution upon the certificate would not be, it is evident, equivalent to a levy on the share or interest of the owner in the corporation, any more than the levy on a bill of lading would be a levy on the goods therein described, or a levy on a chattel mortgage instrument itself would be a levy on the chattels mortgaged. It would be a valid levy only to the extent that such naked paper has a commercial value, and no further. Bearing in mind, therefore, that by a "share of stock" and "share" in a corporation, as used in the statute, is meant an intangible interest or right, in legal contemplation, of the owner in the corporation property or fund, and that a share certificate is merely written evidence of the existence and ownership of the share or interest of such owner, it is believed that the owner's stock or share in the corporation is not reached under the statute by either a levy of execution or garnishment upon a share certificate as such issued by the corporation. It is especially provided by the statute that, in order for the creditor to reach the shares or interest of any owner of shares or interest in any corporation by garnishment, the garnishment shall be served upon the incorporated company itself. Article 296, R. S. Under this mode of procedure given by statute, it was intended, we think, to regard the stock, for the purpose of garnishment proceeding, as being in the possession of the corporation itself. So it would follow that, if the corporation itself is deemed and regarded in law as being in possession of the share or right of the owner, the bank here could not be held to have any property or effects, beyond the value of the naked paper, of Rogers in the corporation, in its possession. There is no claim by pleading or proof here that the certificate itself as a naked piece of paper was of value; therefore no liability on that point is here involved. According to many authorities, it is announced that certificates of stock in the hands of a third person cannot be subjected to the debts of the owner by garnishment served on such third person. See Winslow v. Fletcher, 53 Conn. 390, 4 Atl. 250, 55 Am. Rep. 122; Cooke v. Hollett, 119 Mass. 148; Armour Bros. v. Bank, 113 Mo. 12, 20 S. W. 690, 35 Am. St. Rep. 691; Bank v. Williams, 112 Mich. 564, 71 N. W. 150; Price v. Brady, 21

Tex. 614; 2 Cook on Corp. § 491. Coming to the conclusion, as we have, that the bank could not be here held liable in garnishment, judgment was properly rendered for it, we think, by the court on this particular controversy.

It is quite common to deal with a certificate of stock as did Rogers and the bank here. In such transactions a purchaser under foreclosure undoubtedly acquires the equitable title to the stock in the corporation by reason of the assignment and power of sale, and such purchaser has a right to call upon the corporation to clothe him also with the legal title by permitting a transfer to himself on its books, and to demand a new certificate in his own name. 2 Thompson on Corp. § 2394. But it must be understood that the question here involved is not whether the bank or its assign is clothed in equity with all the rights of Rogers as against Rogers, but whether the garnishment of the certificate for shares as such was a valid seizure of the shares or stock of Rogers in the corporation.

As the court erred in not rendering judgment for appellants for the $777.89, the judgment must be reversed, and, as the facts are admitted, be here rendered for appellants against the garnishee for that sum with legal interest from the date of the trial below.

[5] As the garnishee by its answer became itself a litigant with appellants, the attorney's fees must be denied, and as well the costs of the court below and of appeal will be taxed against the garnishee. Moursund v. Preiss, 84 Tex. 554, 19 S. W. 775; article 307, R. S.