## AUTOMOBILE MORTGAGE CO. v. AYUB et al. (No. 571–4033.)

(Commission of Appeals of Texas, Section A. Nov. 19, 1924.)

**1. Corporations ⬥65—Shares of stock defined.**

Shares of stock of a corporation are a species of personal property, belonging to the shareholder, entirely separate and distinct from the corporation's property.

**2. Intoxicating liquors ⬥327(1) — Sale of stock of corporation owning liquor not sale of liquor.**

Sale of shares of stock of a corporation, engaged in liquor business and owning liquor, is not a sale of liquor, as regards validity of buyer's notes given in part payment.

**3. Intoxicating liquors ⬥327(3) — Sale of stock of foreign liquor company not against public policy.**

Sale in Texas of shares of stock of a corporation of Mexico, there engaged in liquor business, legitimate under its laws, contravenes no public policy, and purchase-money notes are enforceable in Texas courts.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by the Automobile Mortgage Company against Miguel Ayub and others. Judgment for plaintiff was reversed by the Court of Civil Appeals (252 S. W. 287), and plaintiff brings error. Reversed, and judgment of district court affirmed.

Paul D. Thomas and C. L. Galloway, both of El Paso, for plaintiff in error.

Zach Lamar Cobb, of Los Angeles, Cal., for defendants in error.

GERMAN, P. J. February 1, 1922, M. Ayub, Ben Revilla, and Manuel F. Lopez executed and delivered to Harry Miller and George Sadlo two promissory notes, one for $3,000, due 60 days after date, and one for $2,000, due 4 months after date, each bearing 10 per cent. interest. The notes were dated at El Paso, Tex., and payable at El Paso. The Automobile Mortgage Company of El Paso afterwards became the owner of the notes. These notes were given as part payment for certain shares of stock in the Latin-American Club, a corporation created under the laws of Mexico, and doing business in the city of Juarez, state of Chihuahua, Mexico. All property owned by the corporation was situated at Juarez, and all of its business was done there. The transaction involving the sale of the stock and the execution of the notes in part payment therefor took place in the city of El Paso, Tex.

At the date of the sale of the stock the Latin-American Club had a lease upon certain property in Juarez, and operated a cabaret and bar, and in connection therewith sold intoxicating liquors. Among the assets of the club was a stock of liquors, wines, and beers of the value of $6,527.93. The business of operating the cabaret and bar and the selling of intoxicating liquors in connection therewith was under a concession from the Mexican government, and was a legitimate business under the laws of that country. Gambling was also done upon the premises of the club; but at the time of the sale of the stock gambling was done without any lawful authority for that purpose.

The makers of the notes mentioned having failed to pay the same, the Automobile Mortgage Company filed suit thereon against them on December 19, 1922, in the district court of El Paso county, Tex., and a writ of attachment was levied upon certain property belonging to Ayub. A trial before the court resulted in a judgment for the plaintiff for the full amount of the notes, interest, and attorney's fees, and foreclosure of the attachment lien. The trial court filed findings of fact, which are set out in the opinion of the Court of Civil Appeals (252 S. W. 287); but the statement made above is sufficient for a consideration of the one proposition upon which a decision of the case rests. The Court of Civil Appeals in its opinion states:

"We are therefore of the opinion that the sale by Miller and Sadlo to appellants of stock in the Latin-American Club was, in substance, a sale of an interest in a stock of intoxicating liquors and a retail liquor business. * * * In view of the fact that the notes originated in a transaction, which in effect and substance constituted a sale of intoxicating liquor, that such sale in part was the consideration for the notes, that the contract of purchase was made in El Paso, and the notes executed and made payable there, we are of the opinion that the validity of the notes is to be governed by the laws of this country, and recovery denied, because they are based upon and arise out of a transaction which contravenes our public policy."

Upon this holding the court reversed and rendered the case in favor of Ayub and others, who were appellants in that court.

We are not prepared to give approval to the proposition that, even if this had been a sale of an interest in a stock of intoxicating liquors, situated in the republic of Mexico, the contract of sale being consummated in this state, such would be in contravention of public policy and void. But we do not find it necessary to discuss that question. It is evident that, if this was not a transaction, which in effect amounted to a sale of intoxicating liquors, directly or indirectly, or in which the sale of liquors constituted a part of the consideration for the notes sued on, the proposition that the notes are void, because of an illegal consideration, or because the transaction was in contravention of public policy, is without foundation.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Shares of stock in a corporation are a species of personal property, belonging to the holder thereof, entirely separate and distinct from the property of the corporation itself. They are the subject of barter and sale the same as other personal property. Under our laws they are subject to taxation, may be impounded by garnishment proceedings, and may be sold under execution as other personal property. They are the intangible interests of the individual shareholders in the corporate business, while the tangible property belongs to the corporation. Turner v. Cattleman's Trust Co. (Tex. Com. App.) 215 S. W. 831; Presnall v. Stockyards Nat. Bank (Tex. Civ. App.) 151 S. W. 873, affirmed 109 Tex. 32, 194 S. W. 384. In the case last cited it is said:

"It is generally agreed that shares in an incorporated company are the aliquot parts of the capital stock, and merely give to the owner a right to his share of the profits of the corporation, while it is a going concern, and to a share of the proceeds of its assets, when sold for distribution in case of its dissolution and winding up. The shares do not give to their owners any right in the property itself of the company. That remains in the artificial body called the corporation."

The recent case of Herbert v. Simson, 220 Mass. 480, 108 N. E. 65, L. R. A. 1915D, 733, referring to shares of corporate stock, states:

"A share of capital stock is property of a peculiar kind. Accurately speaking, it does not consist in an interest either legal or equitable in the property of the company. It is personalty, although the corporation may own real estate. If not a chose in action, it is in the nature of a chose in action. The share certificate is evidence of title, and for some purposes may possess some of the incidents of property. While not negotiable, shares are freely assignable, and in this respect resemble negotiable choses in action and tangible property rather than other nonnegotiable choses in action."

In Dawson v. National L. Ins. Co., 176 Iowa, 362, 157 N. W. 929, L. R. A. 1916E, 878, Ann. Cas. 1918B, 230, it is said:

"Shares of stock * * * are regarded by courts of law and of equity as a species of property, as vendible in the market, as having a pecuniary value, and as clothing their owner with proprietary rights which will be protected and enforced."

In Millard v. Green, 94 Conn. 597, 110 A. 177, 9 A. L. R. 1610, it is said:

"A certificate of stock, while it shows the fractional interest in the property of a corporation to which the owner of the certificate is entitled, in no way entitles the owner to the possession of any specific goods, or to any property whatever, except by way of dividends or a distributive share on the dissolution and winding up of the corporation."

This is the well-settled doctrine of our own courts, and the courts of all other states. See "Share of Stock," 4 Words and Phrases, Second Series, pp. 566, 567; also 7 R. C. L. p. 196.

In United States Radiator Corp. v. State, 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585, the court says:

"While conditions may exist under which equity will consider the shareholders as the proprietors and the ultimate beneficiaries of the corporate interest, the fact is that a corporation is an individual being, capacitated through statutory powers to acquire the title to, own, and dispose of, real and personal property, enter into contracts, engage in business, sue and be sued and taxed. It is the owner of all the corporate property, real and personal, and within the powers conferred upon it by the charter can deal with it as absolutely as a private individual can with his own. The whole title to it is in the corporation, and the shareholders are neither tenants in common nor in any legal sense the owners of it."

[2, 3] What, then, do we find in the present case? Simply a transaction in the sale and purchase of shares of stock in a corporation They were property, they had a value, they were assignable, and they are what the parties were dealing with by the contract of sale. The consideration on the one hand was the stock in the Latin-American Club, and on the other hand the cash and notes given in exchange therefor. The value of the stock of liquor may have, to some extent, contributed to the value of the shares of stock, but not necessarily so, and this would have nothing to do with determining the nature of the transaction. Miller and Sadlo as shareholders in the corporation had no legal right to demand possession of a single ounce of the liquors belonging to the corporation, or to make sale thereof. The transfer of the stock did not have the effect of divesting the corporation of title to any part of the stock of liquor, and conveyed to the other parties no present estate or title, legal or equitable, in the physical property of the club. What they acquired was a "right to participate, according to the amount of [their] stock, in the surplus profits of the corporation on a division, and ultimately, on its dissolution, in the assets remaining after the payment of its debts." Olsen v. Land Co., 87 Tex. 371, 28 S. W. 944. Counsel for defendant in error and the Court of Civil Appeals rest their contention that this was in effect a sale of an interest in intoxicating liquors on the expression used in some of the cases, to the effect that in the last analysis "the stockholders are the beneficial owners of the assets of the corporation." This is true, but counsel misconstrue the meaning of this expression. As stated by Judge Gaines in Harbor Co. v. Manning, 94 Tex. 563, 63 S. W. 627, it means that the stockholder has no direct interest in the property of the corporation. His right is collateral. It is not a present estate, but merely a right which has as incident to it the possibility of becoming an equitable title. The condition upon which this possibility is

based is that the corporation be dissolved, or cease to perform its corporate functions, and there are assets remaining after creditors are satisfied. As long as the corporation is a going concern, it is owner of the whole title, legal and equitable, of all corporate property, and the transfer of shares of stock in the corporation by the individual stockholder passes no title, as distinguished from a mere equitable right, to any of the corporate assets.

We are unable to conceive, by any legitimate stretch of the imagination, how the sale of shares of stock in a foreign corporation, consummated in the city of El Paso, could be construed to amount to a conveyance of a present, tangible interest in a stock of liquors situated in the city of Juarez, Mexico. There being no law which prohibits the sale of stock in a foreign corporation, and no public policy contravening such a transaction, the sale in this instance must be treated as other legitimate transactions taking place within our state, and there is no reason, legal or moral, why our courts should not enforce the rights of the parties as determined by the contract between them.

This effectually disposes of every contention made by defendants in error, and we recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court be in all things affirmed.

CURETON, C. J.   The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.