**MORONEY v. MORONEY et al.    (No. 143.)***

(Court of Civil Appeals of Texas. Waco. · Dec. 10, 1925. Rehearing Denied Jan. 21, 1926.)

**1. Guardian and ward ⬤⇒37—Guardian could not manage corporation controlled by wards.**

Guardian of minors, who controlled 499 of 500 shares in a hardware corporation, could, as such guardian, collect dividends, but could not manage corporation's business, and order authorizing him to see that business was safely and properly conducted conferred no right or duty that was not already his by statute.

**2. Corporations ⬤⇒182—Stockholders of corporation had no interest in its claims on third person, since they did not own business, and were owners with corporation of property.**

Where money was paid to guardian by going corporation, in which his minor wards controlled 499 of the 500 shares, such wards as stockholders had no interest in claims against guardian, and could not sue to recover amount paid, since they did not own the business, and were in no sense joint owners with corporation of corporate property.

**3. Judgment ⬤⇒707—Rights of corporation could not be determined, where it was not party to proceeding.**

Rights of corporation, in which wards owned stock, could not be determined in suit between guardian and ward to which it was not a party.

**4. Corporations ⬤⇒119—Sale of stock on long-time note did not preclude raise in rent of building occupied by corporation.**

Where owner of 499 of the 500 shares of corporation sold 40 on long-time note, with agreement for payment from profits, and also owned building rented to corporation, such contract of sale did not preclude increase of rent after his death.

**5. Guardian and ward ⬤⇒141—Guardian held not accountable for money already received indirectly by wards.**

Where guardian's two minor wards owned 459 of 500 shares incorporation, and guardian rented ward's building to corporation for less than he could have obtained, he was accountable for only 41/500 of difference, since 459/500 was received by wards in added profits of corporation.

**6. Guardian and ward ⬤⇒141—Statute covering liability for rental without court order construed.**

Meaning of Rev. St. 1911, § 4136, providing guardian shall account to estate of wards for reasonable value of rent of their property, when rented without order of court, is that he shall compensate them for any loss sustained by reason of their property being rented at less than its reasonable value.

**7. Guardian and ward ⬤⇒141—Guardian held not accountable for rent of wards' homestead occupied with them.**

Where guardian of person and estate of two minor wards moved into their homestead property after they refused to live at his home, he was not accountable for rent of such homestead, when it produced no revenue, being entitled to occupy it with them as guardian of their persons by express provision of Rev. St. 1911, art. 3416, subd. 4.

**8. Guardian and ward ⬤⇒35—State Constitution provides for guardian's occupancy of ward's homestead.**

Right of guardian to occupy homestead of ward is incident of guardianship, and expressly provided for by State Const. art. 16, § 52.

**9. Guardian and ward ⬤⇒151—Failure to account for wards' money bars guardian's commission.**

When guardian knowingly and wrongfully fails to account to wards for money in his hands belonging to estate, he is not entitled to commission thereon.

**10. Guardian and ward ⬤⇒158—Determination of guardian's right to commission was question of fact.**

Where right of guardian to receive commission was contested, question whether he knowingly and wrongfully withheld funds of wards was one of fact, to be determined by trial court or jury.

**11. Appeal and error ⬤⇒1010(1)—Determination of whether guardian procured court order for expenditures, being question of fact, not disturbed on appeal.**

Finding of trial court, supported by evidence, that guardian made no expenditure for education and maintenance of wards in excess of income without order of probate court, is binding on Court of Civil Appeals, being finding of fact.

Appeal from District Court, Dallas County; J. E. Gilbert, Judge.

Bill of review by J. M. Moroney and another, to set aside order of county court, approving guardian's reports of W. J. Moroney. Appeal was taken from the judgment in the county court to the district court. From the judgment, both parties appeal. Reformed and affirmed.

Lawther & Pope, of Dallas, for plaintiffs.

Thompson, Knight, Baker & Harris, of Dallas, for defendants.

STANFORD, J. On November 30, 1910, appellant was, by order of the county judge of Dallas county, appointed guardian of the persons and estates of James M. Moroney and Thomas J. Moroney, minors; and his bond fixed at $600,000, and J. B. Adoue, J. H. Powers, and J. D. Robinson were appointed appraisers. Appellant qualified as such guardian by taking the oath and giving the bond required. The estate of said minors owned stock in several corporations, so on December 9, 1910, the county court entered an order authorizing W. J. Moroney, as such guardian, to vote the stock owned by said minors in any and all corporations, and directed said

guardian to take such steps as he might deem proper to see that the business of the Moroney Hardware Company is continued and safely and properly conducted. Pursuant to this order, W. J. Moroney, appellant, was elected president of the Moroney Hardware Company, and continued in that capacity until the close of the guardianship, a period of 4½ years.

On January 21, 1911, appellant, as guardian, with J. B. Adoue and J. H. Powers, two of the appraisers, filed an inventory and appraisement of said estate, consisting of the following property:

| | |
|---|---:|
| The residence homestead of the deceased parents of the minors, and a rent house on the same lot, of the value of......... | $ 22,000 00 |
| Another lot with several buildings on same, rented to various tenants, appraised at ................................... | 77,500 00 |
| A business lot fronting on Elm. street with a four-story brick building on same, occupied by the Moroney Hardware Company as a tenant, said lot and building valued at............................. | 130,000 00 |
| Household goods, automobile, books, pictures, etc., valued at...................... | 2,000 00 |
| The following stock in corporations, to wit: | |
| 459 shares of stock in the Moroney Hardware Company of the par value of $100 per share, appraised at $300 per share.. | 137,700 00 |
| 1 share Dallas Club, par value $100 appraised at ................................. | 40 00 |
| 7 shares National Bank of Commerce stock, par value $100 per share, valued at $175 per share...................... | 1,225 00 |
| 20 shares Commonwealth Fire Insurance Company, par value $100 per share, appraised at total of........................ | 2,600 00 |
| 1 share Elks Building Association, par value $100, appraised value............. | 100 00 |
| 14 shares common stock and 8 shares preferred stock, Texas Traction Company, appraised at .............................. | 400 00 |
| List of claims due or to become due belonging to estate: | |
| Open account due by Moroney Hardware Company to James Moroney, deceased, the accumulation of rents and dividends during a series of years................. | 14,712 17 |
| Note of J. D. Rogers to James Moroney, deceased, the purchase price of 40 shares stock Moroney Hardware Company, which stock is pledged to secure said debt ....................................... | 9,678 00 |
| Note of Edith Bassel for.................... | 1,000 00 |
| Total .................................... | $498,955 17 |

The above inventory and appraisement was duly sworn to by the guardian, and on February 4, 1911, was duly approved by the county court, and a bond of $800,000 required to be given by the guardian. The bond for $800,000 was given and duly approved by the county court. Appellant, as guardian, filed his first annual account April 2, 1912, showing a balance to the credit of the estate of $634.63. On July 30, 1912, this report was approved by the county court; but on August 24, 1912, said county court entered another order modifying his former order by charging the guardian with the bond premium of $500 for making bond. On January 10, 1914, appellant filed his second annual account, showing a debit of the estate to the guardian of $2,480.24. May 29, 1914, the county court entered an order approving the second annual account. On April 26, 1915, W. J. Moroney filed his resignation as guardian. October 6, 1915, W. J. Moroney filed in the county court his confirmation of resignation and his account for final settlement.

On April 14, 1915, James Moroney, who would have become of age in July, 1915, had his disabilities of minority removed by judgment of the district court, and after so doing applied for, and was appointed and qualified, as guardian of the person and estate of Thomas J. Moroney, his brother, and then for himself and as guardian and next friend of Thomas J. Moroney, filed in the county court bills of review to set aside the order of the county court approving the guardian's first, second, and final report, and trials were had on each report separately. On the first report, the county court found the guardian was indebted to the estate of his wards in the sum of $6,569.53. On the second report the county court found that the estate of said wards was indebted to the guardian in the sum of $1,402.92. On the third report the county court found the guardian was due said estate $6,284.14.

Appeal was taken from the judgment of the county court in each of said proceedings to the district court, where all of said proceedings were consolidated, and an auditor was appointed to state the accounts. On February 15, 1921, the auditor filed his report. All parties filed amended pleadings in the consolidated cases, and trial was had before the court without a jury, and on December 29, 1922, the court entered judgment against appellant as guardian for $35,013.12, together with 6 per cent. interest on said amount from January 1, 1916, amounting in the aggregate to $49,684.07, with interest at 6 per cent. from date of judgment. Both sides have appealed and assigned error to the judgment of the court, and to the court's findings of fact and conclusions of law.

### Opinion.

[1] Under his first, second, and seventh assignments of error, appellant contends the court erred in holding that the wards, being stockholders in the Moroney Hardware Company, a private corporation, owned the property of the corporation, its business, capital, and assets, and that therefore the mercantile business of the corporation together with its capital and assets, were a part of the estate of the wards, and that in consequence the guardian, as such, should be charged with $17,000 paid by said corporation to W. J. Moroney personally, and charged to him personally, and with $940 worth of merchandise charged by the corporation to W. J. Moroney personally during the period of the guardianship, and that the court erred in rendering judgment against the guardian for

said items upon said theory. As bearing upon this phrase of the case, the trial court made the following findings:

"This case has been contested, both during its trial and since, in briefs of counsel, upon conflicting theories of the law as applicable to the facts. The plaintiffs, who were the contestants in the county court, contend that their estate includes the Moroney Hardware Company, its stock of merchandise and other assets, as well as its outstanding certificates of stock, of which certificates plaintiffs are the owners, except as to one share of the par value of $100. They also contend that said hardware company and all the other assets of the estate are and have been treated by their guardian, defendant herein, as a unit, throughout the guardianship, lasting for 4⅓ years. The defendant contends that the said hardware company is a separate entity in which the plaintiffs have no interest as owners of the merchandise or its other assets, and that, whatever liability may attach to the guardian for moneys paid to him, or on his order, by the hardware company, is a matter of no concern of the wards, and that the guardian's liability as to such assets is purely personal and to the hardware company only."

In connection with the findings of the court, as above set out, the record without dispute, discloses that James Moroney organized and had incorporated the Moroney Hardware Company with a capital stock of $50,000, being 500 shares of the par value of $100 each; that one share was taken by W. J. Moroney, one by J. B. Adoue, and 498 by James Moroney; that, prior to his death, James Moroney, on December 31, 1907, sold 40 shares held by him to J. D. Rogers, and took his note therefor for $9,678 bearing 5 per cent. interest per annum, and said 40 shares were by consent of Rogers held by James Moroney as collateral to secure the payment of said note. Also James Moroney entered into a contract with J. D. Rogers, by the terms of which he agreed with Rogers that said note should be paid by application of the dividends or profits that might accrue to Rogers as the owner of said 40 shares. This note was inventoried as a part of the estate, and said note, secured by the 40 shares as collateral, and contract providing how same should be paid, all passed into the hands of the guardian when he qualified as such. He collected no part of said note, and on his resignation the guardian returned to the estate said note, collateral, and contract, and, if said note and contract were canceled and the 40 shares reconveyed to the estate, the same was done by some other representative of the estate after appellant had ceased to be guardian and after the matter had passed out of his hands. The court found:

"The business of the hardware company and the assets of the wards in toto were treated throughout the guardianship as a single entity or unit."

The hardware company was due the estate an open account of $14,712.17; the guardian collected this amount as a debt due the estate, and reported same in his first report. The guardian also, as guardian, collected dividends or surplus profits accruing on stock owned by the estate, and applied same to payment of debts against the estate, and in some instances paid claims against the estate by giving orders as guardian on the corporation, which were paid by the corporation out of its profits, and all of these were by the corporation properly charged to the guardian, and were reported to the county court, and by said court approved. The guardian, as such, had the right to collect most of the dividends or profits of the corporation and to use same for the benefit of the estate of his wards, as said estate owned most of the stock of said corporation. If the collecting of such dividends or profits is what the court meant by the term, "the business of the hardware company," then the court's finding is correct, but, if by such term the court had in mind the buying and selling of merchandise, and the general conduct of the business of the corporation, and the ownership and handling of the assets of said corporation, then such finding, we think, finds no support in the evidence. The inventory, the guardian's reports, and the orders of the county court, all affirmatively show that the guardian did not regard, and did not treat, the business and assets of the corporation as a part of the estate of the wards. The guardian made no report of the corporation's volume of business, made no charge for commissions upon its purchases and sales, nor for moneys collected or paid out for it, nor did he apply to court for a reasonable compensation for his services in managing the business of the corporation. He applied for no order of the court authorizing him to conduct the business of the corporation, and, if he had applied for such order, and the county court had granted same, such order, we think, would have been void and of no force or effect, because said corporation was a live, going concern, being managed by a board of directors, and said court was powerless to take its management out of the hands of its board of directors and place same in the hands of a guardian, or any one else. The order of December 9, 1910, of the county court, authorizing W. J. Moroney, guardian, to vote stock held by him as guardian in all corporations, and authorizing him to take such steps as he may deem proper to see that the business of the Moroney Hardware Company is continued and safely and properly conducted, is, we think, unimportant, and conferred no right, and enjoined no duty, upon the guardian that was not already his virtue of our statutes prescribing the duties of guardians.

[2, 3] W. J. Moroney was at one time associated with his brother, James Moroney, in the hardware business, and on the organization of the Moroney Hardware Company, a corporation, in 1907, W. J. Moroney was made

(280 S.W.)

a director, and continued as a director in said corporation until the death of James, his brother, in September, 1910; so W. J. Moroney was, to a certain extent, familiar with the hardware business and with the business of said corporation. At the time of the death of James Moroney, he was president of the corporation, and J. D. Rogers was general manager, and James Moroney, W. J. Moroney, and J. D. Rogers constituted the board of directors. At the death of James Moroney, his property was inherited by his only two children, James M. and Thomas J. Moroney, minors, and after the death of James Moroney, and after W. J. Moroney had qualified as the guardian of the persons and estate of said two minor boys, who were about 14 and 16 years of age, W. J. Moroney was elected president of the Moroney Hardware Company, a corporation, and J. B. Adoue was elected a director; the directors then being W. J. Moroney, J. D. Rogers and J. B. Adoue, J. D. Rogers continuing as general manager, and all other old employees being retained and continued in their same positions held by them at the time of the death of James Moroney.

In his findings, the trial court says: "I find said mercantile business was a part of the estate of said wards." In this, a finding of law, we think the trial court was in error. The Moroney Hardware Company was, and has been since its organization, and still is, a private corporation, organized and existing under and by virtue of the laws of the state of Texas, a going concern, a living, corporate entity, in law a person authorized to sue and be sued, to contract and be contracted with, to transact any and all business in the hardware line as prescribed in its charter. The entire title to its property of every kind, whether designated assets, capital, or capital stock, was and is in it, the corporation. No part of said title was in its stockholders. Its stockholders, as such, had no right to or claim in the property of said corporation. They were not tenants in common, nor in any other sense joint owners of the corporate property. So neither the probate court nor the district court had any jurisdiction over the capital, assets, or property of the corporation, nor of the conduct of its business. The two items of $17,000, paid by the corporation to W. J. Moroney individually, and so charged to him on the books of the corporation, and $940 for merchandise sold to him individually, and so charged to W. J. Moroney, if correct, are debts due by Moroney to the corporation, and the corporation has the right to bring suit to recover the same, but appellees, as stockholders, have no interest in said claims, and no right to maintain a suit for the recovery of same. The corporation not being a party, in no event could its rights be determined in this proceeding. Automobile Mortgage Co. v. Ayub (Tex. Com. App.) 266 S. W. 134; Harbor Co. v. Manning, 94 Tex.

558, 63 S. W. 627; Turner v. Cattleman's Trust Co. (Tex. Com. App.) 215 S. W. 831; Presnall v. Stockyards Nat. Bank (Tex. Civ. App.) 151 S. W. 873; Stockyards Nat. Bank v. Presnall, 109 Tex. 32, 194 S. W. 384; U. S. Radiator Corp. v. State, 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585. The trial court was not at liberty to treat the corporation, its business and assets as a part of the estate of said wards. The county court never so treated said matters; neither did the guardian. The trial court found further:

"But, if the hardware company be treated as a separate entity, then the checks to W. J. Moroney, personally, by the Moroney Hardware Company, aggregating $17,000, and the merchandise amounting to $940, are not chargeable in the guardianship account."

This, we think, is a correct statement of the law as applied to this case, and as the corporation cannot be treated otherwise than as a separate entity, for there is no dispute but that it was and is such, it necessarily follows that the money paid to W. J. Moroney individually, and so charged to him individually by the corporation on its books, and the merchandise sold by the corporation to W. J. Moroney individually, and so charged to him on its books, are not chargeable in the guardianship account. They were not so charged in the county court. If W. J. Moroney owes the corporation these two items, then the corporation has its right of action against him therefor, and the corporation is the only one that does have such right of action, and it is not a party to this suit. The district court was in error in including these two items in the guardian's account. We sustain appellant's first, second, and seventh assignments.

[4, 5] In connection with the question raised by the assignments just disposed of, there is another closely related question raised by both sides which we will now consider. The lot on Elm street, with a four-story brick building on same, was the property of James Moroney, and on his death was inherited by his two minor sons, James M. and Thomas J. Moroney, and was inventoried and appraised at $130,000 by W. J. Moroney, guardian, as the property of said wards. This property had for many years been occupied by the Moroney Hardware Company as a tenant at an annual rental of $350 per month. On the trial in the district court, appellees contended, and one witness so testified, that the rental value of said property was $1,000 per month, and sought to charge the guardian with the difference between the rental he received for said property, $350 per month, and what it could have been rented for, $1,000 per month, or a difference of $650 per month during the period of the guardianship of 52 months, amounting to $33,800 for the term. The court, in his findings as above set out,

states, in substance, that the case has been contested upon conflicting theories of the law as applicable to the facts; that the plaintiffs (appellees here) contend that their estate includes the Moroney Hardware Company, its stock of merchandise and other assets, as well as its outstanding certificates of stock. They also contend that said hardware company and all of the other assets of the estate are and have been treated by their guardian as a unit throughout the guardianship lasting for 4⅓ years. The defendant (appellant here) contends that the said hardware company is a separate entity, in which the plaintiffs (appellees here) have no interest as owners of the merchandise or its other assets, and that whatever liability may attach to him for moneys paid to him by the hardware company is a matter of no concern to the wards, and that his liability as to such assets is personal to the hardware company only. And the court says further:

"It is apparent that these two theories are irreconcilable for the purpose of stating the accounts in this litigation. For illustration, if the estate is to be treated as a unit, it is immaterial whether the guardian collected a small or large rental for the use of the real property owned by the wards (and occupied by the hardware company), since it would be like taking money from one pocket and putting it in another of the same owner, but, if the hardware company be treated as a separate entity, it makes a large difference in the account, as a practical result, as well as in the statutory liability of the guardian for rents."

So the trial court stated the guardian's account, treating the corporation and all its assets as belonging to the estate of said wards, and, so treating the corporation, included in said account the $17,000 charged to W. J. Moroney personally by the corporation, and also the $940 charged to W. J. Moroney personally by the corporation for merchandise sold to him, but refused to charge the guardian the difference between the rental of $350 and $1,000, or $650 per month, for the use of the Elm street property by the corporation during the guardianship of 52 months, or a total of $33,800.

The trial court also stated the guardian's account, treating the corporation as a separate entity, and, so treating the corporation, found said $17,000 charged to W. J. Moroney personally by the corporation, and the $940 so charged to him by the corporation for merchandise, were not proper charges in the guardianship account, but, in so treating the corporation, the trial court charged in the guardian's account the difference between $1,000 and $350, or $650 per month rental for the use of the Elm street property by the corporation during the guardianship of 52 months, or $33,800. The trial court adopted and rendered his judgment on the first theory above set out, to wit, that the corporation was a part of the estate, but stated said account

on both theories, as stated by him, in order that, if this court should hold that he was in error in holding that the corporation was a part of the estate, and that it should be treated as a separate entity, then this court would be able to adopt the latter theory and render judgment thereon.

Under appellant's fourth, sixth, and tenth assignments, he contends that the court erred in holding that, if the corporation be treated as a separate entity, then the guardian should have collected a monthly rental of $1,000 from the corporation instead of $350 a month during the period of the guardianship, amounting to $33,800. By their seventh and eleventh assignments, appellees contend that it was the duty of the guardian to collect from the corporation a monthly rental of $1,000, whether the corporation be treated as a part of the estate of said wards or whether it be treated as a separate entity, and that the court erred in not so holding, and in refusing to include in his judgment rendered said $33,800 against the guardian. We will dispose of the assignments of both sides together.

For many years and up to the time of his death, James Moroney, who owned 459 of the 500 shares of the corporation, and held as collateral 40 more shares, had rented said property to the Moroney Hardware Company for $350 per month. The amount of this rent had been fixed by the father of the wards, who in his lifetime owned all of the stock in the corporation except one share owned by W. J. Moroney and except 40 shares which he had sold to J. D. Rogers, who had given long-time note for same, secured by said 40 shares as collateral, with the agreement with Rogers that the profits accruing on said 40 shares should be credited on said note, and that said note would be paid by the application of such credits. When W. J. Moroney qualified as guardian, he did not increase the amount of this rent, but continued to charge and collect from the corporation rent at the same amount of $350 per month, and, during the period of the guardianship, the county court, to whom the guardian reported said charge and collection of rent, approved and confirmed said action of the guardian; and, further, as James Moroney, at a time when the rent was fixed at $350 per month, sold 40 shares of stock to J. D. Rogers and took a note therefor for $9,768, and contracted with Rogers that the profits on said 40 shares should be applied to said note until it was paid, and as this note and contract came into the hands of the guardian, and were effective and binding obligations during the entire guardianship period, appellant contends the guardian was not at liberty to increase the rent. While we think the contract with Rogers did not preclude the guardian from increasing the rent on said building, at the same time, doubtless, this contract with Rogers, and the fact his brother, James Mo-

roney, had fixed the rent at $350 per month, and it had remained so for many years, induced the guardian to let it remain as his brother had fixed it.

As heretofore stated, the wards owned 459 shares of stock in the Moroney Hardware Company, and held as collateral to secure the $9,768 Rogers note, 40 additional shares, making 499 shares of the 500 shares in the Moroney Hardware Company owned and controlled by the wards. As owners of the lot and building, it was to the interest of the wards that they should receive the highest rent that could be obtained. As owners and pledgees of all of the stock of the corporation, it was to their interest that said corporation should pay the lowest rent which the owner of the property would receive therefor. The trial court, in his findings, says:

"For illustration, if the estate is to be treated as a unit, it is immaterial whether the guardian collected a small or large rental for the use' of the real property owned by the wards, since it would be like taking money from one pocket and putting it in another of the same owner."

[6] This is true, and to a large extent is equally true whether the corporation and its assets be treated as belonging to the estate of the wards, or treated as a separate entity. What the wards would gain as the owners of the property by an increase in the rent, they would, in the main, lose as stockholders by a corresponding increase in the expense of the corporation, resulting in a like decrease in dividends and profits on their stock. The one would, to a large extent, offset the other. Article 4136, Revised Statutes, provides, in effect, when a guardian rents the property of his wards without an order of the court, he shall be required to account to the estate of the wards for the reasonable value of the rent of such property for the time the same was so rented. We think the evident meaning of this statute is that the guardian shall compensate his wards for any loss sustained by reason of their property being rented for less than its reasonable rental value. If the building occupied by the corporation had been rented for $1,000 per month during the guardianship of 52 months, they would have received $33,800 more rent than they did receive, but they would have received 459/500 of $33,800 less as profits on the 459 shares of stock owned by them than what they did receive. So the only loss of rents sustained in any event was 41/500 of $33,800, or $2,771.60. This amount of additional rents, we think, should be allowed, instead of $33,800. The trial court, we think, was in error in holding that, if the Moroney Hardware Company and its assets be treated as a separate entity, then the guardian should be charged with $33,800 additional rent which he failed to charge and collect from said corporation, but the court should have allowed only $2,771.60 addition-

al rents. So we sustain appellant's assignments to the extent above stated, raising this question, and overrule appellee's assignments bearing upon the same matter.

[7] Under several assignments, appellees contend that the trial court erred in refusing to charge appellant rent for the homestead property of said wards occupied by said wards together with appellant, their guardian, and his family, at the rate of $125 per month, a total amount of $5,750. The record discloses that the mother and father, their two boys, and Miss Mary Kelly, a professional nurse, who had nursed said two boys from infancy, occupied their family home, a large two-story house fronting McKinney avenue; that the mother of said wards died, and the father, James Moroney, his said two boys, and their said nurse, Miss Kelly, continued to occupy said family home until James Moroney, the father, died in September, 1910. Appellant and his family occupied a small cottage on an adjoining lot. Miss Kelly, who had nursed said wards from infancy, and who was for all practical purposes a member of the family earnestly desired to remain with said minors, and they desired she should remain with them. After the death of their father and the qualification of their uncle, W. J. Moroney, as guardian of the persons and estate of said minors, who were about 14 and 16 years of age, said minors being attached to the old homestead, both having been born and reared there, and both their parents having died there, they refused to take a room in their guardian's cottage, where there was no room for Miss Kelly, and would not consent to leave said family homestead and rent it out, to be occupied by strangers, but insisted on continuing to occupy this old home. Appellant being guardian of the persons of said minors, to properly look after their welfare and to give them the proper care and attention and the benefit of home influences, he and his family, to whom the minors were greatly attached gave up their cottage and moved into the James Moroney homestead. This old homestead and the rent house, known as the Appleby place, being badly out of repair in many respects, appellant made permanent and valuable improvements on both of said pieces of property, amounting in the aggregate to $9,629.91. The guardian continued to occupy said home place with his family and the wards during the continuance of the guardianship; the wards, appellees, are now asking that appellant, the guardian, be charged $125 per month rental during the period of the guardianship.

[8] The trial court found that appellant was the guardian of the persons, as well as of the estate of said minors, and that, as guardians of the persons of said wards, he was entitled to occupy the homestead with his wards, and is not accountable for rent when it produced no revenue. In this holding we think the trial court was correct.

Subdivision 4, art. 3416, Revised Statutes; Osborn v. Osborn, 76· Tex. 494, 13 S. W. 538; Hall v. Fields, 81 Tex. 553, 17 S. W. 82; Quintana et al. v. Giraud (Tex. Civ. App.) 209 S. W. 770. The right to occupy the homestead of the wards by their guardian is an incident of his guardianship, and is expressly provided for by article 16, § 52, of the Constitution of Texas. This is an equitable and just rule of law, as the guardian of the person receives no compensation for his services as such. The right of minors to occupy the homestead is guaranteed to them by the Constitution and laws of this state, and no one can deprive them of that right. In this case, as above set out, said minors demanded such right and refused to go elsewhere. They were entitled to a home and home influences, and to furnish said wards such, and to give them proper care and training, it was imperative that the guardian and his wife should occupy the homestead with them. There was no other alternative. We overrule all of appellees' assignments raising the question here discussed.

[9, 10] Under several assignments of error, appellees contend that the trial court erred in finding and adjudging that appellant as guardian was entitled to $10,160.52, or any part thereof, as commissions for his services as guardian, because, as appellees contend, he knowingly and wrongfully failed to account to said wards for large sums of money, etc. The general rule of law in this state seems to be that, when a guardian knowingly and wrongfully fails to account to his wards for moneys in his hands belonging to the estate, he is not entitled to commissions thereon. Thomas v. Hawpe et al., 35 Tex. Civ. App. 311, 80 S. W. 129; American Surety Co. of N. Y. v. Hardwick (Tex. Civ. App.) 186 S. W. 804. It is also true that, whether or not the guardian has so knowingly and wrongfully failed to so account is a question of fact, to be determined by the court or jury as other questions of fact. Crawford v. Hord, 40 Tex. Civ. App. 352, 89 S. W. 1097; American Surety Co. v. Hardwick (Tex. Civ. App.) 186 S. W. 804. The record in this case is very voluminous. The statement of facts contains over 2,000 pages of typewritten matter. The transcript contains 489 pages. An auditor was appointed, who made a very comprehensive report. The record indicates that the trial court gave the case much study and thoughtful consideration. The record contains his findings of fact and conclusions of law. Both the auditor and the trial court found that appellant was entitled to said $10,160.52, commission, thereby finding that appellant had not knowingly and wrongfully withheld funds belonging to said wards, and said finding, in our opinion, is supported by the evidence. We overrule appellees' assignments raising this question.

[11] Under appellees' first, second, third, fourth, and fifth assignments, they contend the trial court erred in finding, holding, and adjudging that appellant, the guardian, made no expenditures for education and maintenance of the wards during his guardianship, in excess of the clear income of the estate of said wards, without first procuring an order of the probate court authorizing such expenditures. This is also a finding of fact by the trial court, and, as there is ample evidence in the record to support same, such finding is binding upon the court. We overrule these assignments.

We have considered all of appellees' assignments, and, finding no error pointed out by any of them, overrule all of appellees' assignments. We sustain appellant's assignments as above stated, and, for the errors therein pointed out, reform the judgment of the trial court by eliminating, as of date January 1, 1916, from the statement of the guardian's account and judgment of the trial court the two items heretofore referred to of $17,000 and $940.90, or a total of $17,940.90, and add to said amount the rent item of $2,771.60 as stated above, making a net balance of $19,843.80 due by appellant, with 6 per cent. interest on same from January 1, 1916, and said judgment, as above reformed, is in all things affirmed.