THE ATTORNEY GENERAL
OF TEXAS
ATTORNEY GENERAL


*Affirm hadling*
*in O-2644*

August 29, 1972

Honorable Byron Tunnell
Chairman
Railroad Commission of Texas
P.O. Drawer 12967, Capitol Station
Austin, Texas 78711

Opinion No. M-1201

Re: Consideration of cir-
cumstances under which
payment may be owing
to the Railroad Commission
of Texas of 10% of consider-
ation for transfer of certifi-
cate of convenience and
necessity (common carrier
and Specialized Motor
Carrier) (Art. 911b,
Sec. 5 and 5a (a), V.C.S.).

Dear Mr. Tunnell:

You request our opinion concerning three questions of law under the
Texas Motor Carrier Act, Article 911b, Vernon's Civil Statutes.

In relation to the first question, you advise us of the following facts:
A corporation which is not a motor carrier extended credit to a motor
carrier and took a security interest in the debtor's equipment and its
specialized motor carrier certificate. When the debtor motor carrier
was adjudicated a bankrupt, the bankruptcy referee transferred the certifi-
cate to the corporate creditor. Although not a motor carrier, the secured
corporate creditor obtained approval from the Railroad Commission pur-
suant to Article 911b, Section 5a (a), for the transfer of the certificate
from the bankrupt motor carrier to itself and paid the 10% transfer tax
required under Article 911b, Section 5a (a). The corporate creditor

ici and paid the required 10% transfer tax upon the purchase price.

You ask us whether the transfer of the certificate from the bankrupt
motor carrier to the corporate creditor in satisfaction of the security in-
terest is a transfer within the scope of Article 911b, Section 5a (a).

In order to qualify as a transferee of a motor carrier certificate, it
must be shown that

"(1) the transfer is in good faith, (2) the <u>successor to the
certificate is able and capable of continuing the</u>

> operation of the equipment in such manner as to render the services demanded by the public necessity and convenience... and (3) the proposed transfer is in the public interest." Brown Express, Inc. v. Railroad Commission, 415 S.W. 2d 394, 396 (Tex. Sup. 1967) (Emphasis added.); also Article 911b, Section 5a (a), V.C.S.

Only when such a showing can be made is the recipient of the certificate a "transferee" within the contemplation of Article 911b, Section 5a (a). Because it is not a motor carrier, the corporate creditor in the present situation may be unable to make the required showing of ability and capability to continue service under the certificate.

Nevertheless, the corporate creditor may exercise control over the certificate without being a transferee in the sense of Article 911b, Section 5a (a). It is our opinion that the nature of this control is analogous to the control of a certificate that may pass by virtue of the merger or purchase of a business association which holds such a certificate. Therefore, the corporate creditor is within the scope of Section 17.5, Motor Transportation Regulations of the Railroad Commission of Texas (April 29, 1970), which specifies, as here pertinent:

> "(a) It shall be lawful to acquire control over a motor carrier or for any carrier (whether one or more) to acquire control over another carrier (whether one or more), whether through ownership of stock, merger, consolidation, or otherwise.

***

> "(c) The term 'control' as used in this section shall include, without limitation, actual control as well as legal control, whether maintained or exercised through or by reason of the method of or circumstances surrounding organization or operation, through or by common directors, officers, or stockholders, a voting trust or trusts, a holding or investment company or ·companies, or through or by any other direct or indirect means; and shall include the power to exercise control." Motor Transportation Regulations, supra, Section 17.5 (a), (c).

The corporate creditor is thus subject to the reporting requirement of part (b) of the regulation:

"(b) When a transaction is proposed under subsection (a), the person, carrier, or carriers acquiring control shall present written notification of such acquisition to the Commission by filing with the Director such notification which should state the manner in which control is being acquired and list any changes in officers, directors or shareholders." Motor Transportation Regulations, supra, Section 17.5 (b).

If such a creditor applies under Article 911b, Section 5a (a), for a transfer of the certificate to him, the Railroad Commission should decline jurisdiction to approve the transfer and should require the creditor to comply with Section 17.5 (b), Motor Transportation Regulations, supra.

Therefore, it is our opinion that the transfer of the motor carrier certificate from the bankrupt motor carrier to the corporate creditor which is not a motor carrier in satisfaction of the security interest is not a transfer within the scope of Article 911b, Section 5a (a).

In relation to the second question, you provide us with these facts: A motor carrier certificate is transferred between three corporations, the original holder, the intermediate holder (transferor) and the final holder (transferee). The transferor made a promissory note to the original holder as consideration for the transfer of the certificate to it, and obtained Railroad Commission approval, paying the 10% tax on the amount of the note as required by Article 911b, Section 5a (a). The transferee contracted to purchase the certificate from the transferor. The contract recites that the consideration for this transfer consists, in part, of the transferee's assumption of the primary obligation to pay the balance of the promissory note to the original holder. The transferee has applied to the Railroad Commission, under Article 911b, Section 5a (a), to approve the transfer of the certificate to it.

You ask us whether the amount of the obligation which the transferee has contracted to assume is subject to the 10% tax required by Article 911b, Section 5a (a). We conclude that it is.

. This situation is unlike that presented in your first question, where we found that there was no sale or tranfer within the scope of Article 911b, Section 5a (a). Here, there is an outright sale of the motor carrier certificate, clearly within the contemplation of the statute.

By assumption of the obligation entered into by the transferor, the tra
feree became primarily liable on the promissory note, and the transferoi
obligation receded to that of a surety. <u>Straus v. Brooks</u>, 136 Tex. 141, :
148 S. W. 2d 393, 396 (1941). But for the fact that the original holder ma
look to the transferor as surety after pursuing the transferee upon the
latter's default, (V. C. S., Business and Commercial Code, Section 3. 415
comment 1) the present situation cannot be distinguished from a parallel
situation in which the transferee might make a promissory note payable t
the transferor for the same amount as the obligation assumed in this cas(
In the parallel situation, the amount of the promissory note would clearly
be subject to the 10% tranfer tax under Article 911b, Section 5a (a). We
do not believe that there is sufficient difference between the two cases to
provide a basis for distinguishing them.

Therefore, it is our opinion that the amount of the obligation which th·
transferee assumed is subject to the 10% tax, as it is part of the "amount
paid as consideration" for the transfer. Article 911b, Section 5a (a).

Regarding your third question, you provide us with the following facts
One corporation has purchased all of the outstanding shares of the capital
stock of another corporation. One of the assets of the latter corporation
is a motor carrier certificate.

You ask us whether the Railroad Commission has jurisdiction under
Article 911b, Section 5, to approve the transfer of the motor carrier
certificate and to impose the 10% transfer tax. We believe that it does
not, because no transfer within the scope of Article 911b, Section 5a (a)
takes place.

In our Texas Attorney General Opinion No. O-2644 (1940), the Directi
of the Motor Transportation Division of the Railroad Commission request
an opinion whether Article 911b, Section 6 (f), Vernon's Civil Statutes,
conferred jurisdiction upon the Railroad Commission to approve applica-
tions for the sale and transfer of the capital stock in corporations hold-
ing certificates issued under the authority of Article 911b. We were then
of the opinion that no such authority existed, reasoning that a sale of the
capital stock of the corporation was not a sale or transfer of the assets,
since:

> "[t]he tangible property of a corporation belongs to the
> corporation as such, the stockholders merely owning
> intangible interests in the corporate business. Turner
> v. Cattlemen's Trust Co., 215 S. W. 831 [Tex. Comm.
> App. 1919, opinion adopted]; Automobile [Mortgage] Co.

v. Ayub, 266 S.W. 134 [Tex. Comm. App. 1924,
opinion adopted]." Texas Attorney General Opinion
No. O-2644, supra at page 3.

Although we failed to find the jurisdictional basis that the Railroad Com-
mission then sought, we noted that

"[i]f the service is not kept up or the permit is
otherwise abused remedies are provided in Article
911b. See section 12 (b)." Texas Attorney General
Opinion No. O-2644, supra at page 3.

Necessary to the conclusion in our former opinion was the determina-
tion that the assets of the corporation are separate from the interest ob-
tained by the purchase of the stock in the corporation so that, effectively,
there was no transfer of the certificate. We reaffirm this holding.

Not only does the Railroad Commission have recourse to the corrective
provisions mentioned in our prior opinion, but we believe that this case
falls squarely within the scheme of Motor Transportation Regulations of
the Railroad Commission of Texas, Section 17.5 (April 29, 1970), set
forth above. Subsection (a) provides that it is lawful to acquire control
over a motor carrier through the ownership of stock. Subsection (c)
defines the "control" within its scope as that which may be maintained or
exercised through, inter alia, any direct or indirect means, which we
believe to include the purchase of the outstanding capital stock of a cor-
poration. This leads us to the conclusion that the corporation in the
instant case is subject to the reporting requirement of Subsection (b)
of the regulation.

Therefore, we are of the opinion that the Railroad Commission is
without jurisdiction, under Article 911b, Section 5, to approve a trans-
fer of the motor carrier certificate or to impose a transfer tax of 10%,
since there is no transfer of the certificate. Nevertheless, the pur-
chaser of the capital stock of the corporation is subject to the pro-
visions of Section 17.5 (b), Motor Transportation Regulations, supra.

## SUMMARY

When a corporate creditor, which is not a motor carrier,
receives a motor carrier certificate from its debtor's bankruptcy
trustee in satisfaction of the creditor's security interest, the
creditor is not a "transferee" of a motor carrier certificate

within the scope of Article 911b, Section 5a (a), V.C.S. In order to become a transferee within the statute, the applicant for transfer approval must demonstrate his ability to fulfill the demand which justified the original issuance of the certificate. Although it may be unable to make such a showing, the creditor still exercises control over the certificate and is subject to the reporting requirement of Section 17.5 (b), Motor Transportation Regulations.

Where part of the stated consideration for the sale of a motor carrier certificate is the purchaser's assumption of the primary obligation on a promissory note made to another by his vendor, the amount of the obligation assumed is subject to the 10% tax imposed by Article 911b, Section 5 (a), V.C.S.

A purchase of all of the capital stock of a corporate motor carrier is not a purchase of its assets, but only a purchase of ownership in the corporation. Therefore, there is no taxable transfer within Article 911b, Section 5, V.C.S., when the capital stock of a corporate motor carrier is purchased by another corporation. There is, nevertheless, a transfer of control of the certificate within the scope of Section 17.5 of the Motor Transportation Regulations. Thus, the purchaser must comply with the reporting requirement of Section 17.5 (b).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Rex H. White, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen Co-Chairman